No. 23-35153

# In the United States Court of Appeals for the Ninth Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

THE STATE OF IDAHO,
*Defendant.*

Appeal from the United States District Court
for the District of Idaho
Honorable B. Lynn Winmill
(1:22-cv-00329-BLW)

**OPENING BRIEF OF APPELLANTS – INTERVENORS
THE IDAHO LEGISLATURE**

Monte Neil Stewart
11000 Cherwell Court
Las Vegas, NV 89144
Telephone: (208) 514-6360
monteneilstewart@gmail.com

Daniel W. Bower
MORRIS BOWER & HAWS PLLC
1305 12th Ave. Rd.
Nampa, ID 83686
Telephone: (208) 345-3333
dbower@morrisbowerhaws.com

*Counsel for Appellants – Intervenors*

## CORPORATE DISCLOSURE STATEMENT

As a branch of the government of Idaho, Appellants-Intervenors are not required to submit a corporate disclosure statement under Federal Rules of Appellate Procedure (FRAP) 26.1(a).

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ............................................................ 1

ISSUES PRESENTED ............................................................................. 1

STATEMENT OF THE CASE ................................................................. 1

STANDARD OF REVIEW ..................................................................... 13

SUMMARY OF ARGUMENT ............................................................... 13

ARGUMENT ......................................................................................... 16

   I.    RECENT UNITED STATES SUPREME COURT PRECEDENT
        ENTITLES THE IDAHO LEGISLATURE TO INTERVENE AS
        OF RIGHT ................................................................................ 16

        A. *Berger* Holds that Federal Courts Should Allow a Duly Au-
          thorized State Agent Like the Idaho Legislature to Intervene
          as of Right ............................................................................ 16

        B. The Idaho Legislature Meets the Conditions of Mandatory
          Intervention Under *Berger* ................................................. 25

        C. The Government's Reasons for Distinguishing *Berger* Are
          Unsound ............................................................................... 30

        D. The District Court Misread or Disregarded *Berger* ............. 33

        E. Circuit Precedent Since *Berger* Is Consistent with Allowing
          the Legislature to Intervene as of Right ............................... 44

  II.    THE IDAHO LEGISLATURE SATISFIES TRADITIONAL
        CRITERIA OF MANDATORY INTERVENTION ................... 47

        A. The Legislature Filed Its Motion Timely ............................. 48

        B. The Legislature Has a Legal Interest in This Case ............. 48

        C. The Legislature's Interest Would Be Impaired or Impeded
          Without Intervention .......................................................... 49

D. The OAG Does Not Represent the Legislature's Interest Adequately ...................................................................... 49

E. The District Court Failed to Apply Traditional Standards When Ruling that the OAG Adequately Represents the Legislature's Interests .............................................................. 53

III. DENYING THE LEGISLATURE'S MOTION TO INTERVENE AS OF RIGHT DISRESPECTS IDAHO'S SOVEREIGN DECISION REGARDING WHO WILL DEFEND ITS LAWS .......... 54

CONCLUSION ........................................................................... 59

CERTIFICATE OF COMPLIANCE ......................................... 60

STATEMENT OF RELATED CASES ...................................... 61

# TABLE OF AUTHORITIES

## Cases

*Alden v. Maine,*
   527 U.S. 706 (1999) ............................................................... 55

*Arakaki v. Cayetano,*
   324 F.3d 1078 (9th Cir. 2003) ............................. 15, 50, 51, 52, 53, 54

*Bannister v. Davis,*
   140 S. Ct. 1698 (2020) ........................................................... 33

*Berger v. North Carolina State Conference of the NAACP,*
   142 S. Ct. 2191 (2022) ............................................................ *passim*

*Bradley v. School Board of Richmond,*
   416 U.S. 696 (1974) ............................................................... 12

*Burford v. Sun Oil Corporation,*
   319 U.S. 315 (1943) ............................................................... 58

*California Department of Toxic Substances Control v. Jim Dobbas, Inc.,*
   54 F.4th 1078 (9th Cir. 2022) ................................................. 44, 45

*Callahan v. Brookdale Senior Living Communities, Inc.,*
   42 F.4th 1013 (9th Cir. 2022) ................................................. 45, 46

*Cameron v. EMW Women's Surgical Center,*
   142 S. Ct. 1002 (2022) ........................................................... 48, 55

*Cook County v. Texas,*
   37 F.4th 1335 (7th Cir. 2022) ................................................. 46, 47

*Dobbs v. Jackson Women's Health Organization,*
   142 S. Ct. 2228 (2022) ....................................................... 2, 3, 12, 34

v

*Donnelly v. Glickman,*
 159 F.3d 405 (9th Cir. 1998) .............................................................. 1

*Evans v. U.S. Department of Interior,*
 604 F.3d 1120 (9th Cir. 2010) ........................................................... 13

*Ex parte Young,*
 209 U.S. 123 (1908) ........................................................................... 35

*Gregory v. Ashcroft,*
 501 U.S. 452 (1991) ........................................................................... 55

*Hart v. Massanari,*
 266 F.3d 1155 (9th Cir. 2001) ..................................................... 43, 44

*Local Number 93, International Association of Firefighters v. Cleveland,*
 478 U.S. 501 (1986) ........................................................................... 57

*Maine v. Taylor,*
 477 U.S. 131 (1986) ........................................................................... 54

*Mayor of City of Philadelphia. v. Educational Equality League,*
 415 U.S. 605 (1974) ........................................................................... 55

*Minnesota v. Carter,*
 525 U.S. 83 (1998) ............................................................................. 42

*MK Hillside Partners v. Commissioner,*
 826 F.3d 1200 (9th Cir. 2016) ........................................................... 43

*Planned Parenthood Great Northwest v. State,*
 2022 WL 3335696 (Idaho Aug. 12, 2022) .......................................... 2

*Planned Parenthood v. Casey,*
 505 U.S. 833 (1992) ............................................................................. 2

*Roe v. Wade,*
 410 U.S. 113 (1973) ............................................................................. 2

*Sossamon v. Texas*,
    563 U.S. 277 (2011) ................................................................ 35

*Southwest Center for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ................................... 47, 48, 49

*Trbovich v. Mine Workers*,
    404 U.S. 528 (1972) ................................................. 28, 40, 50

*Washington State Building & Construction Trades Council v. Spellman*,
    684 F.2d 627 (9th Cir. 1982)................................................. 13

*Wineries of the Old Mission Peninsula Association v. Peninsula*,
    41 F.4th 767 (6th Cir. 2022) ............................................... 46

## Statutes

28 U.S.C. § 1291 ..................................................................... 1

28 U.S.C. § 1331 ................................................................. 1, 57

42 U.S.C. § 1395dd ................................................... 3, 7, 26, 52

Idaho Code § 18-622........ 1, 2, 9, 10, 12, 27, 33, 34, 35, 38, 51, 53, 54, 55

Idaho Code § 67-465............... 4, 12, 13, 14, 25, 26, 29, 30, 31, 37, 49, 56

Idaho Code § 67-1401 ...................................................... 55, 56

H.R. 326, 67th Leg., Reg. Sess. (Idaho 2023) ......................... 12

N.C. Gen. Stat. § 1-72.2 ......................................................... 17

## Rules and Regulations

FRAP 4(a)(1)(A) ....................................................................... 1

FRCP 24(a)(2) ................................................................. *passim*

FRCP 25(d) ................................................................................. 4

FRCP 59(e) .............................................................. 1, 9, 33

## Constitutional Provisions

U.S. Const. art. VI ..................................................................... 3

U.S. Const. amend. X ......................................................... 15, 16

## Other Authority

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 1998) ................................................................. 50

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291 because the appeal is from an order denying a renewed motion to intervene as of right under Federal Rule of Civil Procedure (FRCP) 59(e). *See Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). The notice of appeal is timely because it was filed on March 2, 2023, less than 30 days after the district court's order issued on February 3. *See* 1-ER-2 (February Order); FRAP 4(a)(1)(A). This brief is filed within the deadline specified by the Court's order dated May 25, 2023.

## ISSUES PRESENTED

Did the District Court commit legal error when it denied the Idaho Legislature's motions for intervention as of right under FRCP 24(a)(2)?

## STATEMENT OF THE CASE

1. This appeal involves the Idaho Legislature's efforts to intervene in a lawsuit brought by the United States challenging the constitutionality of Idaho Code § 18-622[1] (section 622), a statute regulating abortion.

---

[1] Unless otherwise indicated, all references to section 622 are to the amended version in effect as of July 1, 2023.

1

Abortion has been prohibited under Idaho law from territorial days through 1973, when the Supreme Court issued *Roe v. Wade*, 410 U.S. 113 (1973). *See Planned Parenthood Great Nw. v. State*, __ P.3d __, 2022 WL 3335696, at *6 (Idaho Aug. 12, 2022).

In 2020, Idaho adopted section 622, which makes it a crime for a physician to perform an abortion unless necessary to save the life of the mother or to respond to a pregnancy resulting from rape or incest. IDAHO CODE §§ 18-622(2)(a), (b). Section 622 expressly provides that no pregnant woman can be prosecuted under the statute. *Id.* § 5. In anticipation of a decision overruling *Roe*, section 622 provided that it would become effective 30 days after "[t]he issuance of the judgement in any decision of the United States supreme court that restores to the states their authority to prohibit abortion." IDAHO CODE § 18-622(1)(a) (2020 version).

Then came *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022). There, the Supreme Court overturned *Roe* and reversed its understanding of abortion as a constitutional right. "The Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion. *Roe* and *Casey* abrogated that authority. We now overrule those

decisions and return that authority to the people and their elected repre-

sentatives." *Id.* at 2284.[2]

2. On August 2, 2022, only three weeks before section 622 was to

become effective, the United States filed a complaint against the State of

Idaho challenging section 622. 3-ER-346. The complaint alleges the Idaho

law violates the Supremacy Clause of the U.S. Constitution, U.S. CONST.

art. VI, by conflicting with the Emergency Medical Treatment and Labor

Act (EMTALA), 42 U.S.C. § 1395dd. According to the federal government,

EMTALA requires Medicare-participating hospitals to perform an abor-

tion whenever a pregnant woman suffers from an "emergency medical

condition" demanding it. *See* 3-ER-347. Section 622 conflicts with that

requirement, the federal government claims, because it punishes doctors

for delivering medical care required by EMTALA. *See* 3-ER-348. To that

extent, the government says, section 622 is preempted and violates the

Supremacy Clause. *See id.*

3. Six days after the complaint was filed, the Speaker of the Idaho

House of Representatives, the Idaho Senate President *Pro Tempore*, and

_____

[2] The judgment in *Dobbs* issued on July 26, 2022, making August 25 the
effective date for section 622. *See* Docket Statement of July 26, *Dobbs v.
Jackson Women's Health Organization*, No. 19-1392 (July 26, 2022).

the Sixty-Sixth Idaho Legislature (Idaho Legislature or Legislature) filed an expedited motion to intervene.[3] The Legislature noted that "[w]hen a party to an action challenges in state or federal court the constitutionality of an Idaho statute" or "otherwise challenges the construction or validity of an Idaho statute" then Idaho law declares that "either or both houses of the legislature may intervene in the action as a matter of right." 3-ER-341 (citing IDAHO CODE § 67-465) (section 465). The Legislature also cited *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191 (2022), for this key principle: under FRCP 24(a)(2), a unit of state government authorized by state law to intervene in litigation challenging state law should be allowed to intervene as of right. 3-ER-341–42. The Legislature also pointed out its unique perspective based on its participation in lawsuits challenging Idaho statutes regulating abortion. *Id.*

The United States opposed the Legislature's intervention. In the government's view, the Legislature lacked a significantly protectable interest, and whatever interest the Legislature had would be adequately

---

[3] Pursuant to FRCP Rule 25(d), which governs the automatic substitution of government-actor parties, in January 2023 the Appellants-Intervenors became the current Speaker of the Idaho House of Representatives and the Sixty-Seventh Idaho Legislature, with no change in the identity of the President *Pro Tempore* of the Idaho Senate. *See* 3-ER-390.

represented by existing parties. 3-ER-296. The Idaho Office of the Attorney General (OAG) submitted a short statement expressing non-opposition to the Legislature's motion.[4] 3-ER-306.

On August 13, 2022, the district court denied the Legislature's motion. 1-ER-13 (Aug. Order). The district court did not question that the motion was timely, that the Legislature has an interest in the validity of section 622, or that its interest would be impeded without the ability to intervene. *See id.* (discussing factors in FRCP 24(a)(2)). The court's only reason for rejecting the Legislature's request to intervene as of right was that the "Legislature failed to meet its burden of showing that the State will not adequately represent its interests in the litigation." 1-ER-19. By "State," the district court meant the OAG—but not the State Legislature.

Much of the district court's decision tried to distinguish *Berger*. 1-ER-20–27. Under *Berger*, the court acknowledged, a legislature bears a "minimal burden" to prove its interests would not be adequately represented by other government actors. 1-ER-20. But the decision argued that in *Berger*, the North Carolina Governor and Attorney General were less

---

[4] To be clear, references to "OAG" do not implicate the current Idaho Attorney General who took office after the events recounted in this brief.

5

than enthusiastic about defending the disputed law, while Idaho's Governor and OAG appeared to be "unequivocal" and "fully on board" with defending the statute. 1-ER-25. The decision also expressed skepticism that the Legislature would offer "unique" arguments different from the OAG's. *Id.* And the decision further noted that *Berger* was filed against particular state officers where the United States' complaint named the State of Idaho as defendant. 1-ER-24–25. From that, the decision opined that *Berger*'s concern with letting a plaintiff choose which state officials to "defend" state law was not an issue. 1-ER-26.

The lower court likewise voiced practical concerns with intervention. It quoted approvingly from *Berger*'s sole dissent, reiterating that "[i]t is difficult to overstate the burden the Court's holding [in *Berger*] will foist on district courts." *Id.* (quoting *Berger*, 142 S. Ct. at 2211 (Sotomayor, J., dissenting)). Applying the dissent's logic, the court fretted that "allow[ing] a legislature the right to intervene in every federal case whenever it says it should be allowed to do so" would "allow a state to turn into a nine-headed Hydra whenever it so chooses." 1-ER-27. So the district court denied the Legislature's motion.

6

4. It did grant permissive intervention, however, with tight restrictions. Judge Winmill acknowledged that "the Legislature has met the threshold requirements for permissive intervention." 1-ER-28. But the scope of that intervention was sharply circumscribed: "the Legislature's participation will be limited to allowing it to present evidence and argument aimed at 'showing the holes' in the factual foundation of the United States' motion [for preliminary injunction]." 1-ER-29–30. Accordingly, the Legislature was "allowed to participate in the preliminary-injunction proceedings only—and in that limited fashion." 1-ER-13–14.

5. Meanwhile, the merits portion of the case continued to unfold. The United States filed a motion for preliminary injunctive relief. *See* Mot. for Prel. Inj. Relief, ECF No. 17. The OAG submitted an Opposition. 2-ER-231. The Legislature also filed a Memorandum in Opposition, 3-ER-261, which presented factual declarations explaining that section 622 does not actually require doctors to violate EMTALA. "[T]he Government has not shown and cannot show *any* real-world cases where medical procedures supposedly required by EMTALA will not take place unless this Court grants the Government its requested injunctive relief." 3-ER-263 (emphasis in original).

7

The Legislature's Opposition limited itself to factual matters, but because the OAG's Opposition omitted important legal arguments, the Legislature also filed a Motion for Leave to File Legal Arguments. The Motion respectfully sought leave to submit constitutional arguments that the OAG's brief omitted, including the separation of powers, major questions doctrine, and the Spending Clause. 2-ER-225. But the court summarily denied that motion the day it was filed. *See* 2-ER-205. And on that same day, the court likewise rejected the Legislature's request for a hearing to present its factual evidence on the ground that a hearing would create an "additional, untenable burden on the Court." 2-ER-211.

6. Over the next two months, significant disparities between the Legislature's approach and the OAG's became evident. The Legislature recalled the district court's earlier invitation that if "the facts develop such that it becomes clear … the State can no longer adequately represent the Legislature's interests, the Court will entertain a renewed motion to intervene." 1-ER-14. So the Legislature submitted a Renewed Motion to Intervene. 2-ER-98.

In the Memorandum supporting its Renewed Motion, the Legislature reminded the Court that *Berger* gives a duly authorized state agent

the right to intervene without artificial presumptions against intervention. 2-ER-82–87. Even without *Berger* as controlling precedent, the Legislature pointed out that there were "palpable" differences between the way the Legislature and the OAG were litigating the case. 2-ER-81. These differences were both procedural and substantive.

Take procedural differences. The Legislature disagreed with the OAG on the tempo of litigation. Motions practice leading up to the issuance of a preliminary injunction raced at lightning speed. After the injunction was in place—as a practical matter, preventing enforcement of section 622 in Idaho's Medicare-funded emergency rooms—the federal government, the district court, and the OAG were content to proceed in regular order, or slower. Although the Legislature filed its motion to reconsider 14 days after the preliminary injunction, for instance, the OAG filed its motion to reconsider the preliminary injunction on the last day allowed under FRCP 59(e). *See* 3-ER-388–90. Worse, the OAG acquiesced in the federal government's request for an extension of time to submit a response—an about-face from the government's pre-injunction demand for a highly expedited schedule. 2-ER-90. Under that schedule, the

9

United State filed its motion for preliminary injunction only six days after the complaint and the OAG and Legislature filed their replies eight days later. *See* 3-ER-380 (ECF No. 13). Only 18 days elapsed between the complaint and the preliminary injunction. *See* 3-ER-388 (ECF No. 95) (August Order). Slow-walking the case after securing a preliminary injunction was intolerable to the Legislature, considering that enjoining the operation of section 622 is a serious breach of Idaho's sovereign ability to regulate abortion within its borders. 2-ER-112.

Differences in substance were even more glaring. Limited by Judge Winmill to presenting factual contentions, the Legislature timely delivered to the OAG a fully drafted memo laying out legal and constitutional arguments vital to the preliminary injunction dispute. 2-ER-90–91. But the OAG brushed aside these arguments or raised them in a footnote or in some other cursory fashion. *Id.* The OAG's decision to ignore or downplay those arguments had significant legal consequences: the district court declined to consider the only constitutional argument raised by the OAG because it had been relegated to a footnote. *Id*. Even worse, the OAG made key concessions during a hearing on the preliminary injunction

that undercut the Legislature's position. 2-ER-91–92. In sum, the Legislature's Renewed Motion described in detail why its interests were not adequately represented by the OAG.

The United States opposed the Legislature's renewed motion to intervene as of right. The government argued that *Berger* did not control, that the Legislature's interests were adequately represented by the Attorney General, and that allowing the Legislature to intervene would burden the parties and the court. 2-ER-69–75. The OAG submitted a short statement saying that it took "no position" on the motion. 2-ER-61.

The district court denied the Legislature's Renewed Motion to Intervene. *See* 1-ER-2. Once again, the court rejected *Berger* as controlling precedent. 1-ER-7. It insisted instead that *Berger* "did not say that a state agent should *always* be allowed to intervene in federal court when authorized by state law" but only "*sometimes*." *Id.* (emphasis in original). In the lower court's view, the Legislature should not be allowed to intervene because it brought no unique perspective, the Legislature and the OAG had the same overall aim, and *Berger*'s concerns about "shopping" for a sympathetic official to "defend" the statute were irrelevant in this case. 1-ER-7–8. As evidence that the Legislature's interests were adequately

11

represented, the district court recited statements by the Idaho Governor supporting *Dobbs*, 1-ER-15, and labeled the OAG's defense of section 622 "robust." 1-ER-6. In the lower court's view, "nothing has transpired in this litigation to cause the Court to reconsider its prior decision" because, it said, "the Legislature and the State's interests overlap fully." 1-ER-3.

The Legislature filed a timely notice of appeal on March 2, 2023.

While this appeal was pending, Idaho amended Idaho Code § 67-465 to clarify the Legislature's authority to intervene in suits challenging state law. H.R. 326, 67th Leg., Reg. Sess. (Idaho 2023). Those amendments provide that the Legislature may intervene without "evidence that the intervenor's interests differ from any branch, department, office, or official of the state of Idaho" and regardless of "whether the state of Idaho itself is a named party." *See* IDAHO CODE §§ 67-465(2)(a), (b). Those amendments are relevant on appeal because the case must be decided based on section 465 in its present form. *See Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 711 (1974) (requiring a court to "apply the law in effect at the time it renders its decision").

## STANDARD OF REVIEW

The district court's ruling on the issue of mandatory intervention is reviewed de novo. *Evans v. U.S. Dep't of Interior*, 604 F.3d 1120, 1121 (9th Cir. 2010). Rule 24(a)(2) "traditionally has received a liberal construction in favor of applications for intervention." *Wash. State Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982), *cert. denied*, 461 U.S. 913 (1983).

## SUMMARY OF ARGUMENT

An otherwise eligible intervenor should not face insuperable obstacles to intervention as of right simply because a district court is determined to prevent a state from being represented by more than one agent. Only a year ago, an eight-member majority of the Supreme Court interpreted FRCP 24(a)(2) to mean that when a state has "authorized the leaders of [its] legislature to defend duly enacted state statutes against constitutional challenge … a federal court must respect that kind of sovereign choice, not assemble presumptions against it." *Berger*, 142 S. Ct. at 2206. The district court here did not heed that principle.

Idaho law expressly authorizes the leaders of the Idaho Legislature to intervene when a federal lawsuit challenges the validity of state law.

13

*See* IDAHO CODE § 67-465(1).[5] Yet the district court denied the Legislature's motion to intervene as of right on the ground that the OAG adequately represents the Legislature's interests. 1-ER-11. That ruling rests on the presumptions that a would-be intervenor is adequately represented if an existing party is authorized to defend state law and if that party publicly approves the challenged law and commits to defend it. *Berger* took the contrary approach. "For a federal court to presume a full overlap of interests when state law more nearly presumes the opposite would make little sense and do much violence to our system of cooperative federalism." 142 S. Ct. at 2204. The decision below thus contradicts *Berger* and should be reversed on that ground alone.

Even if *Berger* did not fully control (as we are convinced it does), the Legislature satisfies traditional criteria of intervention under FRCP 24(a)(2). The Legislature filed a timely motion to intervene as of right and has a direct interest in defending the validity of state law. *See* IDAHO CODE § 67-465(1). And no one can fairly dispute that without intervention the Legislature's interest will be impeded by an adverse disposition of the

---

[5] Unless otherwise indicated, all references to IDAHO CODE § 67-465 are to the amended statute, effective July 1, 2023.

case. This appeal turns, then, on whether the Legislature may be denied mandatory intervention solely because "existing parties adequately represent" its interests. FRCP 24(a)(2).

Circuit precedent answers that question in terms of three factors. (1) Is the OAG's interest in the case "such that it will undoubtedly make all of [the Legislature's] arguments"? (2) Is the OAG "capable and willing to make such arguments"? (3) And will the Legislature "offer any necessary elements to the proceeding that other parties would neglect"? *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (punctuation altered). Each of these questions should be answered in the Legislator's favor, and it is telling that the district court did not cite *Arakaki*—or any other established standard—to guide its decision on the issue of adequate representation.

Denying the Legislature intervention as of right disrespects Idaho's sovereign power to designate its own agents. In effect, the district court rejected Idaho's decision to structure its affairs so that the OAG and the Legislature will independently defend the State's interests in federal court. Our Madisonian system of federalism, captured in the Tenth

Amendment, is undermined if federal courts apply procedural rules to control which state entities may appear in defense of state law.

Any suggestion that the Legislature could defend its interests through permissive intervention is refuted by the record here. The limits put on the Legislature's permissive intervention hampered its ability to defend Idaho law. Solely because of those limits, the district court refused to grant a hearing on the Legislature's factual contentions and declined even to consider its constitutional objections. *See* 2-ER-208 (denying hearing); 2-ER-205 (denying leave to file legal arguments). Then there is the question of sovereign dignity. Idaho's legislative leaders should not have to rely on a district court's largesse to carry out their statutory duty to defend state law.

For these reasons, the decision below should be reversed and the Legislature permitted to intervene as of right.

## ARGUMENT

## I. RECENT UNITED STATES SUPREME COURT PRECEDENT ENTITLES THE IDAHO LEGISLATURE TO INTERVENE AS OF RIGHT.

### A. *Berger* Holds that Federal Courts Should Allow a Duly Authorized State Agent Like the Idaho Legislature to Intervene as of Right.

16

1. *Berger* controls this case. Like the North Carolina state legislators in that case, the Idaho Legislature is a duly authorized state agent with a statutory duty to defend state law. To examine *Berger* in detail forcefully demonstrates the resemblances with this case.

2. *Berger* arose when a local chapter of the NAACP filed suit against the North Carolina Governor and members of the State Board of Elections, challenging a state voter-ID law as unconstitutional. *See* 142 S. Ct. at 2198. The Speaker of the North Carolina House of Representatives and the President *Pro Tempore* of the State Senate filed a motion to intervene as of right. They invoked a state law authorizing them "to intervene on behalf of the General Assembly as a party in any judicial proceeding challenging a North Carolina statute or provision of the North Carolina Constitution." *Id.* at 2195 (quoting N.C. GEN. STAT. § 1-72.2(b)). Yet the Court of Appeals for the Fourth Circuit, sitting *en banc*, concluded that the legislators were not entitled to intervene "because they could not overcome a 'heightened presumption'" that the North Carolina Board of Elections "already 'adequately represented' [the legislators'] interests." *Id.* at 2200. The Supreme Court granted review and reversed.

17

An 8-1 majority of the Court held that "the people of North Caro-
lina have authorized the leaders of their legislature to defend duly
enacted state statutes against constitutional challenge. Ordinarily, a
federal court must respect that kind of sovereign choice, not assemble
presumptions against it." *Id.* at 2206. Having satisfied FRCP 24(a)(2),
North Carolina's legislators were entitled to intervene as of right.

Starting with the language of Rule 24(a)(2), the opinion for the
Court noted that the North Carolina legislators submitted a timely mo-
tion. As to whether the legislators claimed an interest in the litigation
that would be impaired or impeded, the Court took a firm line. "[F]ederal
courts should rarely question that a State's interests will be practically
impaired or impeded if its duly authorized representatives are excluded
from participating in federal litigation challenging state law." *Id.* at
2201. Doubting whether a state's "duly authorized representatives" ac-
tually have an interest at stake would "evince disrespect for a State's
chosen means of diffusing its sovereign powers among various branches
and officials." *Id.* Not only that, judicial skepticism would "risk turning
a deaf federal ear to voices the State has deemed crucial to understand-
ing the full range of its interests." *Id.*

18

Judicial respect for a state's allocation of power to defend its laws "also serves important national interests." *Id.* Intervention by "lawfully authorized state agents promotes informed federal-court decisionmaking and avoids the risk of setting aside duly enacted state law based on an incomplete understanding of relevant state interests." *Id.* at 2202. That North Carolina law authorized the legislative leaders to represent the state in litigation challenging state law was "dispositive." *Id.*

With that background, the Court tackled the question of whether the legislative leaders were adequately represented by the Governor and the Board of Elections. Although "some lower courts have adopted a presumption of adequate representation in cases where a movant's interests are identical to those of an existing party," the Court underscored that "a presumption like that holds no purchase here." *Id.* at 2204 (citation omitted). Presuming adequate representation "when state law more nearly presumes the opposite would make little sense and do much violence to our system of cooperative federalism." *Id.*[6] This led the Court

---

[6] Although irrelevant in *Berger*, the Court reserved the question "whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance." 142 S. Ct. at 2204.

to formulate its leading principle—that "*a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to defend a state law.*" *Id.* (emphasis added). As *Berger* explained, "[a]ny presumption against intervention is *especially* inappropriate when wielded to displace a State's prerogative to select which agents may defend its laws and protect its interests." *Id.* at 2204–05 (emphasis added). "Normally, a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions." *Id.* at 2205.

Armed with this principle, the "proper resolution" of the legislators' motion readily followed. *Id.* The Court pointed to the Board's and Attorney General's different litigating choices to "illustrat[e] how divided state governments sometimes warrant participation by multiple state officials in federal court." *Id.* at 2205 (citation omitted). But the fulcrum of the Court's logic lay with the purpose behind a state law authorizing both the Legislature and Attorney General to defend state law—"alive as it is to the possibility that different branches of government may seek to vindicate different and valuable state interests." *Id.*

Just because allowing intervention might create some administrative inconvenience was no reason to deny it. "Not only do the legislative

leaders bring a distinct state interest to bear on this litigation. No one has suggested that a cascade of [intervention] motions lies on the horizon here." *Id.* After all, "federal courts routinely handle cases involving multiple officials sometimes represented by different attorneys taking different positions." *Id.* at 2206 (citations omitted). The Court concluded that "[w]hatever additional burdens adding the legislative leaders to this case may pose, those burdens fall well within the bounds of everyday case management." *Id.*

*Berger* concluded that the Fourth Circuit went astray in two respects: "first by failing to afford due respect to North Carolina's law designating the legislative leaders as its agents in litigation of this sort, and then by 'setting the [intervention] bar … too high.'" *Id.* at 2206 n.* (quoting 999 F.3d at 945) (Quattlebaum, J., dissenting)). Accordingly, the Supreme Court reversed, holding that "North Carolina's legislative leaders are entitled to intervene in this litigation." *Id.* at 2206.

3. Justice Sotomayor dissented alone. Normally, a solo dissent in an 8-1 decision does not repay close attention. But here, the *Berger* dissent is worth reviewing in detail because it proved to be the model for the

district court, which followed Justice Sotomayor's approach when denying the Idaho Legislature's motion to intervene as of right.

Justice Sotomayor described the majority's holding as letting state lawmakers "intervene as a matter of right to represent the State's interest in defending the constitutionality of [State] law, even though that interest is already being ably pursued on the State's behalf by an existing state party to the litigation." *Id.* at 2206 (Sotomayor, J., dissenting). To this, she objected.

First, she disagreed with the majority's "presumption that a State is inadequately represented in federal court unless whomever state law designates as a State's representative is allowed to intervene, even where the interests that the intervenors seek to represent are identical to those of an existing party." *Id.* Since the North Carolina legislators "share the same interest" in defending state law as the Governor and Board of Elections, she would have denied intervention. *Id.* at 2212.

Justice Sotomayor added that a presumption of inadequate representation "improperly permits state law, as opposed to federal law, to determine whether an existing party adequately represents a particular

22

interest." *Id.* at 2207. To her—and this was perhaps her most consequential criticism—"Rule 24(a)(2) does not give a State the right to have multiple parties represent the same interest." *Id.* at 2210.

Second, Justice Sotomayor rejected the Attorney General's litigating decisions as evidence that his representation of the legislators' interest was inadequate.[7] His decision to prioritize election administration over the law's constitutionality had no effect, in her mind, on the legislators' eligibility to intervene because that choice did not "render state respondents' representation inadequate." *Id.* at 2213 (citations omitted). And she glossed over disagreements with the existing parties' litigating choices as "strategic decisions that government attorneys make every day." *Id.* at 2213.

Third, Justice Sotomayor worried that allowing a state to designate multiple officials or departments to intervene raised the threat of having

---

[7] Justice Sotomayor suggested that intervention is unnecessary when existing parties "already represent the State's interests in this litigation in a manner that the District Court found adequate, and where the attorney general's defense of the constitutionality of the voter-identification law has thus far proved successful." *Id.* at 2210. But her objection confuses the meaning of adequate representation. FRCP 24(a)(2) asks whether "existing parties adequately *represent* that [movant's] interest"—not whether counsel's representation is *professionally adequate.* FRCP 24(a)(2) (emphasis added).

to admit "3, 4, or 10 or more officials as necessary parties to suits challenging state law." *Id.* at 2211 (punctuation altered). Given that implication, adopting a presumption of inadequate representation would, Justice Sotomayor feared, "foist" numerous burdens on district courts. *Id.* Intervenors would be able to file briefs with every motion and conduct their own discovery. "Even when state agents' positions align, this multitude of parties will clog federal courts and delay the administration of justice." *Id.* (footnote omitted).

Justice Sotomayor's dissent went on to say that deferring to a state's decision to designate multiple agents to protect its interests, at bottom, undermines judicial autonomy. "Federal law gives district courts responsibility to assess, in the first instance, the adequacy of a party's representation because those courts are most familiar with that representation and are responsible for managing their dockets and streamlining proceedings." *Id.* Deferring to the district court's judgment makes sense, she explained, because "mandatory intervention imposes costs on the original parties, on the court, and on all others whose interests depend on timely resolution of a given case." *Id.* She criticized the

majority for "improperly displac[ing] the District Court's firsthand experience in managing this litigation." *Id.* at 2214.

## B. The Idaho Legislature Meets the Conditions of Mandatory Intervention Under *Berger.*

The resemblances between *Berger* and this case are compelling.

1. Like North Carolina, Idaho has chosen to authorize its state legislature to intervene in federal litigation challenging state law. North Carolina's choice to authorize its Legislature to defend state law against federal litigation was "dispositive" in *Berger. Id.* at 2202. So too here given Idaho's choice.

Idaho law vests the Idaho House of Representatives, through its Speaker, or the Idaho Senate, through its President *Pro Tempore*, with express authority to act "as agents of the state of Idaho and as a matter of right" by intervening in any lawsuit "challeng[ing] in state or federal court an Idaho statute as violating or being preempted by federal law …." IDAHO CODE § 67-465(1).

This provision applies here. The complaint brought by the United States both "challenges … the constitutionality of an Idaho statute" and "challenges an Idaho statute as violating or being preempted by federal

law." *Id.*; *accord* 3-ER-348 (complaint's request for "declaratory judgment that Idaho's law is invalid under the Supremacy Clause and is preempted by federal law to the extent that it conflicts with EMTALA."). Those claims trigger the Legislature's authority to intervene.

Also, the Legislature recently amended the statute to remove common excuses for denying intervention. Section 465 says that intervention "[d]oes not require evidence that the intervenor's interests differ from any branch, department, office, or official of the state of Idaho." IDAHO CODE § 67-465(2)(a). And the authority to intervene "as agents of the state of Idaho" is effective "regardless of whether the state of Idaho itself is a named party." *Id.* §§ 67-465(1), (2)(b).

Like the North Carolina statute in *Berger*, section 465 reflects the state's judgment that "leaders in different branches of government may see the State's interests at stake in litigation differently" and that "important public perspectives would be lost without a mechanism allowing multiple officials to respond." *Berger*, 142 S. Ct. at 2197.

2. The district court did not dispute that the Idaho Legislature submitted a timely motion for intervention nor that it has a protectable interest in defending Idaho law. *See* 1-ER-17–27.

26

Nor is it plausible to question whether the Idaho Legislature's interests will be "practically impaired or impeded" without intervention. FRCP 24(a)(2). Ultimately at issue is whether Idaho can enforce its law restricting abortion. *See* IDAHO CODE § 18-622. An adverse decision will resolve that question in a final judgment without a full adversarial presentation by the Legislature in defense of section 622. That result would conclusively impair the Legislature's interest in defending Idaho law. Any doubt on that score is refuted by *Berger*. There, the Supreme Court instructed that "federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." 142 S. Ct. at 2201. Second-guessing whether intervention would practically impair Idaho's interest in defending its laws would "evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials." *Id*. It would also "risk turning a deaf federal ear to voices the State has deemed crucial to understanding the full range of its interests." *Id*.

3. The decisive question is whether the OAG adequately represents the Legislature's interest in defending section 622. *See* FRCP

24(a)(2). *Berger*'s central purpose was to explain how to apply that requirement when a duly authorized state agent seeks to intervene as of right. *Berger* brushed aside the presumption that a governmental entity already named as a party adequately represents the interests of another state actor seeking to intervene merely because "[a]t a high level of abstraction" those interests "might have seemed closely aligned." *Berger*, 142 S. Ct. at 2203–04. Instead, *Berger* cited *Trbovich v. Mine Workers*, 404 U.S. 528 (1972), for the principle that an existing party should not be "presumed an adequate representative" of the intervenor's interests when actually the "movant's burden in circumstances like these 'should be treated as minimal.'" *Berger*, 142 S. Ct. at 2204 (quoting *Trbovich*, 404 U.S. at 538 n.10). As the Court explained, "[i]f the intervenor in *Trbovich* faced only a 'minimal' burden, it cannot be that duly designated state agents seeking to vindicate state law should have to clear some higher hurdle." *Id.* at 2205.

*Berger* went even further. It holds that "a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Id.* at 2204. As if to underscore the point, Justice Sotomayor criticized the majority for embracing the

28

principle that "a State is inadequately represented in federal court unless whomever state law designates as a State's representative is allowed to intervene, even where the interests that the intervenors seek to represent are identical to those of an existing party." *Id.* at 2206 (Sotomayor, J., dissenting).

Here, as North Carolina did in *Berger*, Idaho has made the sovereign decision to designate both the Legislature and the OAG to intervene as state agents in suits challenging state law. *See Berger*, 142 S. Ct. at 2202. Idaho law does not prioritize one over the other or prescribe a first-in-time rule that obliterates the authority of one to intervene if the other is already a party. *See* IDAHO CODE § 67-465. And as in *Berger*, Idaho's decision to appoint the Legislature as its agent in litigation contesting state law merits respect. "[W[here a State chooses to divide its sovereign authority among different officials and authorize their participation in a suit challenging state law, a full consideration of the State's practical interests may require the involvement of different voices with different perspectives." 142 S. Ct. at 2203.

### C.    The Government's Reasons for Distinguishing *Berger* Are Unsound.

In the proceedings below, the United States attempted to show that "the circumstances of this case are materially distinguishable from *Berger* …." 2-ER-69. They are not.

1. The United States mistakenly says that Idaho law "does not expressly authorize the Legislature to represent the State or litigate on the State's behalf." 2-ER-71. Not so. Idaho law authorizes the Legislature's leaders to intervene and to act as the state's "agents." IDAHO CODE § 67-465(1). That is all the authority needed to put this case on all-fours with *Berger*. Like the legislators there, the Appellants here "are *among* those [Idaho] has expressly authorized to participate in litigation to protect the State's interests in its duly enacted laws." 142 S. Ct. at 2204 (emphasis in original).

2. The United States contends that "[t]here is no need for the Legislature to intervene as a party … because the Legislature, as part of the State of Idaho, is already a party to this lawsuit." 2-ER-70. The word *need* suggests that the federal government knows better than Idaho how to protect the state's legal interests. To remove any doubt on that score,

amendments to section 465 clarify that the Legislature's authority to intervene does not depend on "whether the state of Idaho itself is a named party." IDAHO CODE §§ 67-465(1), (2). Nor does *Berger* suggest that a plaintiff can blunt a state's choice to designate more than one state actor to represent it in litigation. *See* 142 S. Ct. at 2202 (accepting that a state may authorize multiple officials to defend its interests in federal court). Surely it is not the federal government's place to tell the State of Idaho how to organize its internal affairs or defend its laws.

3. Unlike in *Berger*, the United States says, its complaint names the State of Idaho rather than individual officials and, for that reason, there is no risk of allowing federal litigation that deprives the court of a full adversarial proceeding or that reflects the plaintiff's cherry-picked choice of an adversary. *See* 2-ER-70. But Idaho law specifically provides that the Legislature's authority to intervene "[d]oes not require evidence that the intervenor's interests differ from any branch, department, office, or official of the state of Idaho." IDAHO CODE § 67-465(2)(a). What's more, *Berger* is less about the accident of suing individual state officials than the principle of state autonomy in appointing multiple agents to defend its laws.

Hence the Court's direct instruction that federal courts must "respect that kind of sovereign choice." 142 S. Ct. at 2206.

4. The United States further argued that intervention is unwarranted because the Legislature and Attorney General are "pursuing the same objective in this lawsuit." 2-ER-67. Indeed, the federal government saw no import in the procedural and substantive disparities between the Legislature's approach and the OAG's. To the government, "the differences in preferred litigating strategy that the Legislature identifies do not render the Attorney General's representation inadequate." 2-ER-73. That criticism recalls a line of argument in *Berger*—but one borrowed from Justice Sotomayor's dissent. *See* 142 S. Ct. at 2213 (Sotomayor, J., dissenting) (dismissing disparities in litigating approach between the legislature and the North Carolina Attorney General as "strategic decisions that government attorneys make every day.").

In short, the federal government invited the district court to adopt Justice Sotomayor's approach in her lone dissent rather than that of the majority opinion. *See id.* at 2206 (decrying the majority's decision to allow intervention "even though that [legislature's] interest is already being

ably pursued on the State's behalf by an existing state party to the litigation"). Unfortunately, the district court accepted that invitation.

### D. The District Court Misread or Disregarded *Berger*.

Despite the inescapable similarities between *Berger* and this case, the district court rejected it as controlling precedent. Twice the court denied the Legislature's motion to intervene based on reasons that more closely track Justice Sotomayor's dissent.

1. Consider the August Order.[8] 1-ER-13. While not contesting the other elements of FRCP 24(a)(2), the district court ruled that "the Legislature has failed to meet its burden of showing that the State will not adequately represent its interest in the litigation." 1-ER-19. The court strained to distinguish *Berger*. Unlike *Berger*, the district court wrote, "the State and Legislature's interests are fully aligned in this litigation." 1-ER-24. The district court denied that the OAG had qualms about section 622 or that other priorities "prevented it from providing a full-

---

[8] While the notice of appeal identified only the February Order denying the motion for reconsideration under FRCP 59(e), an appeal in this posture "merges with the prior determination." *Bannister v. Davis*, 140 S. Ct. 1698, 1703 (2020). As such, we will address both of the district court's August and February orders denying the Legislature's motions to intervene as of right.

33

throated defense of the law on the merits." 1-ER-23. Besides, the court added, the OAG had not "publicly opposed" section 622 or said that "he would decline to defend it." 1-ER-24. Rather, the Idaho Governor made statements "unequivocally supporting the *Dobbs* decision" and section 622. 1-ER-25.

The district court's professed reasons for denying intervention closely track Justice Sotomayor's dissent. She too objected that the Court's interpretation of FRCP 24(a)(2) entitled a state agent to intervene in defense of state law "even though that interest is already being ably pursued on the State's behalf by an existing party to the litigation." *Berger*, 142 S. Ct. at 2206 (Sotomayor, J., dissenting). And she would deny intervention when state actors "share the same interest" in defending state law as the Attorney General litigating the case. *Id.* at 2212 (Sotomayor, J., dissenting).

Despite express authority under Idaho law, the district court curiously wrote that "the Legislature has presented no credible argument that it itself is distinct from 'the State,' either formally or functionally for purposes of this litigation …." 1-ER-25. Because the complaint names the State of Idaho as defendant rather than particular officers of the

State, the court said, it perceived no danger that the United States has singled out sympathetic defendants rather than those committed to defending section 622. *See* 1-ER-25–26.

Yet these aspects of *Berger* are not essential to its holding or rationale. The NAACP sued the North Carolina Governor and members of the State Board of Elections, rather than the state in its own name, to avoid the strictures of sovereign immunity. *See Berger*, 142 S. Ct. at 2197 (citing *Sossamon v. Texas*, 563 U.S. 277, 284 (2011); *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). Little of the *Berger* opinion is occupied with those facts; rather, its repeated stress is on the imperative need for federal courts to respect a state's decision to designate more than one state agent to defend its laws in court. *See, e.g., id.* (describing North Carolina's reasons for designating state legislators as agents to defend state law); *id.* at 2201 ("when a State chooses to allocate authority among different officials who do not answer to one another, different interests and perspectives, all important to the administration of state government, may emerge"); *id.* (excluding a duly authorized state agent as an intervenor "evince[s] disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials"); *id.*

at 2202 ("Permitting the participation of lawfully authorized state agents promotes informed federal-court decisionmaking and avoids the risk of setting aside duly enacted state law based on an incomplete understanding of relevant state interests.").

After striving to distinguish *Berger*, the August Order criticized it. "*Berger* will make litigation in federal court involving states far more burdensome," the court wrote. 1-ER-26. It heartily endorsed Justice Sotomayor's opinion that "[i]t is difficult to overstate the burden the Court's holding [in *Berger*] will foist on district courts." *Id.* (quoting *Berger*, 142 S. Ct. at 2211) (Sotomayor, J., dissenting)). Going further, the lower court predicted extreme results from allowing a movant in the Legislature's position to intervene.

> [T]o ignore distinctions between this case and Berger – and to allow a legislature the right to intervene in every federal case whenever it says it should be allowed to do so *and* without requiring the legislature to meet even its minimal burden of showing it possesses a distinct interest or that its interests are inadequately represented – would allow a state to turn into a nine-headed Hydra whenever it so chooses.

1-ER-26–27 (emphasis in original).

This lament echoes Justice Sotomayor's dissent. She too protested that "[e]ven when state agents' positions align, this multitude of parties

will clog federal courts and delay the administration of justice." *Berger*, 142 S. Ct. at 2211 (Sotomayor, J., dissenting) (footnote omitted). But Idaho law hardly licenses intervention-at-will. Intervention is authorized only when a lawsuit "challenges … the constitutionality of an Idaho statute" or "challenges an Idaho statute as violating or being preempted by federal law, or otherwise challenges the construction or validity of an Idaho statute." IDAHO CODE § 67-465(1). And as in *Berger*, granting the Legislature's motion does not threaten to open the floodgates for other intervenors. 142 S. Ct. at 2206. Respecting Idaho's choice of agents in federal court would create no greater logistical burdens than those "within the bounds of everyday case management." *Id.*

2. The grant of permissive intervention did not cure the lower court's wrongful rejection of *Berger*—far from it. For one thing, the district court put sharp restrictions on the Legislature by ruling that its "participation will be limited to allowing it to present evidence and argument aimed at 'showing the holes' in the factual foundation of the United States' motion [for preliminary injunction]." 1-ER-30. Such limits were intended, the court explained, to "mitigate" any prejudice to the United States. 1-ER-31. But however defended, the obvious effect of this

restriction was to prevent the Legislature from presenting what the OAG would not present—a full, fair, and robust defense of section 622 based on multiple federal constitutional infirmities in the federal government's case on the merits. Such a defense is a "legal" one, different from and beyond the "factual" defense to which the district court limited the Legislature, and that "legal" defense is evidently what the district court did not want to hear. *See e.g.*, 2-ER-205 (denying motion for leave to submit legal arguments).

Even then, the district court materially undercut the Legislature's ability to present its "factual" defense by denying a hearing on the factual issues for which the court had granted permissive intervention. This, even though the Legislature's admissible evidence squarely refuted the factual underpinnings of the federal government's case. *See* 2-ER-211 (denying a hearing because it would allegedly impose an "additional, untenable burden on the Court").

3. The February Order, 1-ER-2, did nothing to correct or minimize the court's wrongful rejection of *Berger*—just the contrary. The district court denied that under *Berger* "a state agent should *always* be allowed

to intervene in federal court when authorized by state law." 1-ER-7. Instead, *Berger* merely "'*illustrate[s]* how divided state governments *sometimes* warrant participation by multiple officials in federal court.'" *Id.* (quoting 142 S. Ct. at 2205) (initial emphasis added). But downplaying the importance of a state's decision to name the Legislature as an agent authorized to defend Idaho law neatly restates Justice Sotomayor's passionate assertion that "Rule 24(a)(2) does not give a State the right to have multiple parties represent the same interest." 142 S. Ct. at 2210 (Sotomayor, J., dissenting).

In the district court's estimation, "nothing has transpired in this litigation to cause the Court to reconsider its prior [August] decision …." 1-ER-3. It found instead "that the Legislature and the State's interests overlap fully such that the State will adequately represent the Legislature's interests." *Id.* Denying intervention as of right based on the court's standardless assessment that the Legislature's interests and those of the OAG are fully aligned brazenly replaces *Berger*'s holding with Justice Sotomayor's preference that intervention as of right should be denied when the movant and an existing party "share the same interest." *Berger*, 142 S. Ct. at 2212 (Sotomayor, J., dissenting).

39

Despite the Idaho Legislature's express authority to intervene, the district court rejected the argument that allowing intervention would "give voice to a different perspective" or "vindicate different and valuable state interests." 1-ER-7–8. This resistance to Idaho's choice to designate the Legislature as a state agent flies in the face of *Berger*, which counseled deference to a state's choice of agents:

> For a federal court to presume a full overlap of interests when state law more nearly presumes the opposite would make little sense and do much violence to our system of cooperative federalism. In cases like ours, state agents may pursue 'related' state interests, but they cannot be fairly presumed to bear 'identical' ones.

*Berger*, 142 S. Ct. at 2204 (citing *Trbovich*, 404 U.S. at 538).

The district court's refusal to credit Idaho's sovereign decision to vest the Legislature with authority to defend state law in litigation is profoundly disrespectful of the state's constitutional prerogatives. The decision below contradicts *Berger* for that reason alone.

Again, the district court elevated the accidental over the essential by emphasizing that the United States sued the state in its own name rather than individual state officials as in *Berger*. 1-ER-8. A fair reading of *Berger* shows that the concern with allowing a plaintiff to choose a

40

sympathetic state defendant was secondary to the Court's central concern with deferring to a state's determination that more than one body of state government will be authorized to defend state laws against litigation challenging them. That is precisely why the final paragraph of the Court's opinion highlights North Carolina's choice to "authorize[] the leaders of their legislature to defend duly enacted state statutes against constitutional challenge." 142 S. Ct. at 2206. It is also why Justice Gorsuch, summing up the Court's analysis, writes that "a federal court must respect that kind of sovereign choice, *not assemble presumptions against it*." *Id.* (emphasis added).

Guided by its rudderless sense of when an existing party represents a Rule 24 movant "adequately," the district court ruled that "the State has and will adequately represent the Legislature's interests in this litigation." 1-ER-9. The court dismissed as "procedural quibbles" evidence that the OAG delayed seeking reconsideration of the injunction and did not object to the government's request for an extension of time. *Id.* The court labeled disparities in the substantive legal arguments raised by the Legislature and the OAG as "slightly different litigation strategies." 1-ER-11. Yet, to pick one instance, the OAG's refusal to

41

press the Major Questions Doctrine in opposition to the injunction high-lights the important differences between the range of legal arguments advanced by the Legislature as compared with those pressed by the OAG. *See, e.g.*, 2-ER-225 (Legislature's Motion for Leave to File Legal Arguments noting that "[t]he Legislature's unique legal arguments were not made by the Attorney General's Office in its 11:51 PM filing last night."); 2-ER-218 (analyzing the Major Questions doctrine which the OAG neglected). *Berger* stands for the exact opposite—that a federal court must not "presume a full overlap of interests when state law more nearly presumes the opposite," to avoid the inevitable "violence to our system of cooperative federalism." *Berger*, 142 S. Ct. at 2204.

The district court overlooked, or disregarded, the implications for our federal system of denying intervention as of right when a state authorizes more than one agent to defend its laws. The district court's attempt to distinguish *Berger* by closely comparing its facts with those in this case risks rendering the Supreme Court's recent and definitive exposition of Rule 24(a)(2) "so limited to its facts that its underlying principle is, in the end, repudiated." *Minnesota v. Carter*, 525 U.S. 83, 99 (1998) (Scalia, J., concurring). That is the upshot of insisting that the

procedural and substantive disparities in litigating approach render *Berger* distinguishable. *See* 1-ER-11. Nor is there a principled distinction between this case and *Berger* merely because the United States has sued the State of Idaho rather than individual officials. *See* 1-ER-8. None of that matters. *Berger* stands for the principle that a federal court must not "presume a full overlap of interests when state law more nearly presumes the opposite," to avoid the inevitable "violence to our system of cooperative federalism." *Berger*, 142 S. Ct. at 2204.

Under *Berger*, the Idaho Legislature should be allowed to intervene as of right because it meets the other elements of FRCP 24(a)(2) and state law authorizes it to defend state law as a state agent. Not only *Berger*'s holding, but its "mode of analysis" is binding. *MK Hillside Partners v. Comm'r*, 826 F.3d 1200, 1206 (9th Cir. 2016). Considering the district court's strained efforts to distinguish *Berger*, and its naked criticism of the majority opinion's reading of FRAP 24(a), the decision below unsurprisingly contradicts *Berger*. Because the Idaho Legislature's request to intervene as of right is materially indistinguishable from the North Carolina Legislature's position in *Berger*, the "very powerful medicine" of binding authority can decide this appeal. *Hart v. Massanari*,

43

266 F.3d 1155, 1171 (9th Cir. 2001). Any reservations about permitting

intervention for a duly authorized state agent like the Idaho Legislature,

when it has submitted a timely motion and otherwise complies with Rule

24(a)(2), should be set aside. *Berger* controls "unless and until the Su-

preme Court itself overrules or modifies it." *Id.*[9]

### E. Circuit Precedent Since *Berger* Is Consistent with Allowing the Legislature to Intervene as of Right.

*Berger* has been cited by this Court and other circuits. Those deci-

sions are consistent with the Legislature's motion to intervene as of right.

1. Take this Court's discussions of *Berger* in *California Department*

*of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078 (9th Cir.

2022). There, this Court granted intervention for insurers wishing to de-

fend a former insured against environmental tort claims. Critical to that

holding was a California law giving insurers a legal interest in defending

---

[9] While continuing to deny intervention as of right, the district court effectively modified the terms of the Legislature's permissive intervention in the February Order. "As the Court did allow the Legislature to permissively intervene to oppose the United States' motion for preliminary injunction, the Court will *fully consider* the Legislature's motion for reconsideration." 1-ER-11 (emphasis added). Since that motion raises both factual and legal arguments, *see* 2-ER-139–165, the Court effectively lifted its earlier prohibition on the Legislature's presentation of legal arguments.

an insured unwilling or unable to defend itself. *Id.* at 1091–92. *Jim Dobbas* illustrates the power of state law to justify intervention as of right and reaffirms *Berger's* holding that "States possess a legitimate interest in the continued enforcement of their own statutes." *Id.* at 1087 n.8 (quoting *Berger*, 142 S. Ct. at 2201 (2022)). Here, the Idaho Legislature stands on even more solid footing than the intervenor in *Jim Dobbas*. Unlike this case, the intervenor there was not a government party and the only legal question was whether the proposed intervenors had a relevant legal interest—which the district court here did not question.

*Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013 (9th Cir. 2022), likewise cited *Berger*. There, a private plaintiff in one case sought to intervene in a related case against the same defendant, to challenge the other plaintiff's proposed settlement of class-action claims. *See id.* at 1021. This Court denied intervention because the existing plaintiff offered adequate representation. *See id.* at 1022.

*Callahan* is distinguishable. There, the would-be intervenor was a private party, not a body of state government whose intervention poses issues of state sovereignty and federalism resonant in *Berger* and this case. Also, the disappointed movant in *Callahan* had no statute expressly

45

authorizing intervention. And while *Callahan's* competing plaintiffs had "*identical* interests in this action" the Legislature here shares related but not identical interests with the OAG. *See Berger*, 142 S. Ct. at 1021 n.5.

2. Post-*Berger* decisions from other circuits likewise confirm the presumption *in favor of* intervention for a duly authorized state agent like the Idaho Legislature.

*Wineries of the Old Mission Peninsula Association v. Township of Peninsula*, 41 F.4th 767 (6th Cir. 2022), upheld the right of a citizen group to intervene in defense of local zoning restrictions even though the township was also defending them. The Sixth Circuit held that the township likely would not "adequately represent" the interests of individual property holders. *Id.* at 775. A reference to *Berger* supported the court's observation that granting intervention to private landowners would not open a "floodgate" of frivolous activity. *Id.* at 777.

Conversely, in *Cook County v. Texas*, 37 F.4th 1335 (7th Cir. 2022), the Seventh Circuit denied intervention to states seeking to challenge a federal rule (2019 Rule) tightening the "public charge" requirements for immigrants. *Id.* at 1337. Timeliness rather than adequate representation

was the pertinent issue. By the time the states moved to intervene, President Biden had already set aside the "public charge" rules and the states had "been aware that the 2019 Rule was on shaky ground for months." *Id.* at 1340. The court's sole reference to *Berger* clarified that it did not apply. *Id.* at 1341 n.2. But the court did take care to say that *Berger* "rested on the prerogative of States to structure themselves as they wish." *Id.* (quoting *Berger*, 142 S. Ct. at 2197) (cleaned up).

In short, *Berger* controls. The Supreme Court's determination to respect a state's selection of agents to represent its interests in litigation ought to be the deciding principle here. Like the North Carolina lawmakers, the Idaho Legislature is duly authorized to intervene in defense of state law, and Idaho's appointment of multiple agents merits respect in federal court.

## II. THE IDAHO LEGISLATURE SATISFIES TRADITIONAL CRITERIA OF MANDATORY INTERVENTION.

Even if *Berger* were not controlling, the Legislature meets the traditional standards for granting intervention as of right. Circuit precedent distills FRCP 24(a)(2) into four elements:

> (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant

47

must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001)

(citation omitted). The Legislature's motion meets these elements.

## A. The Legislature Filed Its Motion Timely.

No one disputes that the Legislature's motion was timely. It was filed on August 8, 2022, *see* 3-ER-380, six days after the United States filed its complaint, *see* 3-ER-379. Allowing the Legislature to participate in the case as a party would not have disrupted or unduly complicated proceedings already underway.

## B. The Legislature Has a Legal Interest in This Case.

The Legislature has a "'significantly protectable' interest" in the subject of this suit. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 817. The Legislature has an incontestable interest in defending the validity of state law. That is true as a matter of general principle. *See Cameron v. EMW Women's Surgical Ctr.*, 142 S. Ct. 1002, 1011 (2022) (acknowledging that States have "a legitimate interest in the continued enforce[ment] of [their] own statutes.") (cleaned up). It is also true as a matter of specific statutory authority. Idaho law authorizes the Legislature to intervene

48

when a lawsuit "challenges … the constitutionality of an Idaho statute …

or otherwise challenges the construction or validity of an Idaho statute."

*See* IDAHO CODE § 67-465(1). The district court effectively conceded that

the Legislature has a protected interest in defending Idaho law. *See* 1-

ER-19–27.

### C.     The Legislature's Interest Would Be Impaired or Impeded without Intervention.

The Legislature is "so situated that the disposition of the action

may, as a practical matter, impair or impede [its] ability to protect that

interest." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 817. Excluding the

Legislature as a party will "impair or impede" its capacity to present the

entire range of arguments that, in its judgment, support the validity of

section 622 from the challenge brought by the United States. *Id.* Probing

that point second-guesses Idaho's decision to designate both the Legislature

and the OAG to defend its laws.

### D.     The OAG Does Not Represent the Legislature's Interest Adequately.

That leaves the fourth prong of FRCP 24(a)(2)—inadequate repre-

sentation. Circuit precedent erects a three-part test to gauge whether a

movant is adequately represented by an existing party:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki*, 324 F.3d at 1086.

"The burden on proposed intervenors in showing inadequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests *'may be'* inadequate." *Id.* (quoting *Trbovich*, 404 U.S. at 538 n.10) (emphasis added).

1. Even if *Berger* does not conclusively decide this case (as we think it does), it must be understood to overrule the presumption that a would-be intervenor must make a "very compelling showing," *Arakaki*, 324 F.3d at 1086 (quoting 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1909 (3d ed. 1998)), to demonstrate a lack of adequate representation when the intervenor and the existing party to the case are both duly authorized state agents). *See Berger*, 142 S. Ct. at 2204 (citing the same treatise provision and rejecting the presumption of identical interests "when state law more nearly presumes the opposite").

2. With the presumption of identical interests set aside, the record convincingly shows that the OAG's interest in this case is not "such that

it will undoubtedly make all of a proposed intervenor's arguments." *Arakaki*, 324 F.3d at 1086. OAG's unwillingness to support the Legislature's motions to intervene as of right, despite express authority under Idaho law, calls into question the precise nature of the OAG's interest in the case. *See* 3-ER-306 (OAG's statement of non-opposition to Legislature's initial Motion to Intervene); 2-ER-61 (OAG's Response to Legislature's Renewed Motion to Intervene).

3. Proceedings below demonstrate that the OAG was not "capable and willing" to make all the arguments that the Legislature would make in defense of section 622. *Arakaki*, 324 F.3d at 1086.

Consider what happened in the lead-up to the district court's issuance of a preliminary injunction. Hampered by the restrictive terms of permissive intervention, the Legislature produced a "fully drafted legal memo describing multiple legal and constitutional arguments" detailing the flaws in the government's motion for a preliminary injunction. 2-ER-90 (Legislature's Mem. ISO Renewed Mot. to Intervene) (Renewed Motion Memo). The OAG did not include those arguments in its memorandum opposing the injunction. *See id.* In fact, the OAG's only constitutional objection was a Spending Clause argument shyly dropped

in a footnote, which the district court dismissed as "not sufficiently developed." 2-ER-179.

Conditions did not improve when the Legislature and the OAG submitted memoranda supporting motions to reconsider the preliminary injunction. The OAG did not endorse the Legislature's memorandum, despite an invitation to do so. *See* 2-ER-90. Worse, the OAG repeated its earlier mistake by raising the Major Questions Doctrine only in an agnostic footnote: "To the extent this lawsuit arises from this agency action—an issue that is currently unclear—the Court's interpretation of EMTALA and the associated Order violates the major questions doctrine and the State incorporates the Legislature's argument …." 2-ER-111 n.1 Hardly an enthusiastic endorsement, that.

These incidents conclusively show that the OAG is not "capable and willing" to make all the arguments that the Legislature will press. *Arakaki*, 324 F.3d at 1087.

4. It is likewise true that the Legislature will present "necessary elements to the proceeding that other parties would neglect." *Id.* Unlike the OAG, the Legislature is prepared to raise and press all reasonably

supported arguments to defend section 622 against the federal government's suit. For the Legislature, this case is no mere question of statutory misconstruction, though misconstruction there certainly is. This lawsuit raises a question of profound constitutional importance—whether the State of Idaho will be allowed to govern itself on the topic of abortion. On that question, and on its commitment to protect the State's unborn children, the Legislature stands ready to contribute elements of factual and legal argument to the case that existing parties neglect.

For these reasons, the Legislature has shown that "representation of its interests 'may be' inadequate." *Arakaki*, 324 F.3d at 1086. Under FRCP 24(a)(2), that's enough to justify intervention. *See* FRCP 24, Notes of Advisory Committee ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene ….").

### E. The District Court Failed to Apply Traditional Standards When Ruling that the OAG Adequately Represents the Legislature's Interests.

The district court did not cite *Arakaki* or any other legal standard when ruling that the OAG adequately represents the Idaho Legislature. *See* 1-ER-3. Instead, the court engaged in a freestanding inquiry into

whether the OAG has publicly supported or opposed section 622. *See* 1-ER-5–6. On that slender basis, the district court concluded that "the interests of the existing party overlap fully with the interests of the proposed intervenor." 1-ER-9.

None of this takes account of the Legislature's status as a duly authorized state agent or considers the significant legal arguments that will not be presented unless the Legislature is allowed to intervene in defense of section 622. Also, the lower court disregarded the axiom that "[t]he burden on proposed intervenors in showing inadequate representation is *minimal.*" *Arakaki*, 324 F.3d at 1086 (emphasis added). In these respects, the February Order falls short and should be reversed.

## III. DENYING THE LEGISLATURE'S MOTION TO INTERVENE AS OF RIGHT DISRESPECTS IDAHO'S SOVEREIGN DECISION REGARDING WHO WILL DEFEND ITS LAWS.

The district court's unwillingness to let the Idaho Legislature intervene as of right has grave constitutional implications. Those implications merit a brief explanation.

A state like Idaho "clearly has a legitimate interest in the continued enforceability of its own statutes." *Maine v. Taylor*, 477 U.S. 131, 137 (1986). This lawsuit directly implicates that interest by challenging the

constitutionality of section 622. Federal courts should recognize that "a State's opportunity to defend its laws in federal court should not be lightly cut off." *Cameron*, 142 S. Ct. at 1011.

It is "[t]hrough the structure of its government and the character of those who exercise government authority," that "a State defines itself as a sovereign." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). States are free in our constitutional system to structure themselves "in a way that 'empower[s] multiple officials to defend its sovereign interests in federal court.'" *Berger*, 142 S. Ct. at 2202 (quoting *Cameron*, 142 S. Ct. at 1011). That follows from the principle that a state may "pattern its government after the scheme set forth in the Federal Constitution or in any other way it sees fit." *Mayor of City of Phila. v. Educ. Equal. League*, 415 U.S. 605, 615 n.13 (1974). And federal courts customarily strive to avoid "displac[ing] a State's allocation of governmental power and responsibility." *Alden v. Maine*, 527 U.S. 706, 752 (1999).

Here, Idaho has chosen to designate both the OAG and the Legislature to defend state law in federal litigation. The OAG has the legal authority to defend state law in any court whatever. *See* IDAHO CODE §

55

67-1401(1) (requiring the OAG "to represent the state and all departments … and other state entities in all courts …."). Idaho law also authorizes the Legislature—or, more precisely, legislative leaders—to defend state law against litigation challenging laws made by the Legislature. IDAHO CODE § 67-465.

The weighty constitutional considerations at stake explain why permissive intervention is insufficient. Although the district court granted permissive intervention, it imposed strict limits on the scope of the Legislature's participation in the case. Those limits allowed the district court to deny a hearing on the Legislature's factual contentions despite permission to intervene on factual issues and, worse, wholly disregard the Legislature's good faith legal arguments—including arguments that the OAG simply refused to make. *See* 2-ER-208 (denying hearing); 1-ER-13 (denying leave to file legal arguments). Because permissive intervention can be modified at the district court's discretion, the Legislature as a permissive intervenor can look forward to participating in this historically significant lawsuit only insofar as the district court approves. Intervention as of right eliminates the overhanging risk of judicial discretion. Only with intervention as of right can the Legislature participate as a

full party in the case, appearing at any hearing, submitting motions and briefing, collecting discovery, and exercising the whole range of litigation privileges and powers as a party to civil litigation in our adversarial system. *Loc. No. 93, Int'l Assoc. of Firefighters v. Cleveland*, 478 U.S. 501, 539 n.* (1986) (Rehnquist, J., dissenting) (cleaned up) (explaining that "[a]n intervenor as of right becomes a party to the action …."). And only intervention as of right will respect Idaho's sovereign choice to empower the Legislature as a state agent in defending state law.

Notice too that the deference required by *Berger* flows naturally from the nature of federal jurisdiction. Federal courts have federal question jurisdiction that empowers them to declare a state law void under the federal Constitution. *See* 28 U.S.C. § 1331. *Berger*'s rationale suggests that a federal court tasked with adjudicating such a suit should defer to a state's sovereign decision to designate multiple agents to defend its laws. Otherwise, a federal court required to pass on the validity or constitutionality of a state law will, through the incorrect application of FRCP 24(a)(2), disallow a state's choice of advocates. And that, *Berger* teaches, is profoundly disrespectful to the state, its elected officials, and its people. 142 S. Ct. at 2205 ("Normally, a State's chosen representatives

should be greeted in federal court with respect, not adverse presumptions."). *Berger's* careful reading of FRCP 24(a)(2) thus appears, like familiar abstention doctrines, to serve the purpose of modulating the exercise of federal judicial power to avoid needless friction in federal-state relations. *See, e.g.*, *Burford v. Sun Oil Co.*, 319 U.S. 315, 331–32 (1943) (holding that abstention is appropriate when federal equitable power would disrupt a state's ability to fashion a uniform policy on a matter of public importance).

The decision below failed to respect Idaho's decision to clothe the Legislature with authority to represent it in litigation when Idaho law is assailed in federal court. Under *Berger*, that choice merits respect—indeed, deference. The district court's contrary presumption that the United States government's choice to sue Idaho in its own name means that all state officials or entities are adequately represented does real "violence to our system of cooperative federalism." *Berger*, 142 S. Ct. at 2204.

## CONCLUSION

The Court should reverse and remand for entry of an order allowing the Idaho Legislature to intervene as of right.

Respectfully submitted,

*/s/ Daniel W. Bower*
Daniel W. Bower
Monte Neil Stewart                      MORRIS BOWER & HAWS PLLC
11000 Cherwell Court                    1305 12th Ave. Rd.
Las Vegas, NV 89144                     Nampa, ID 83686
Telephone: (208) 514-6360              Telephone: (208) 345-3333
monteneilstewart@gmail.com             dbower@morrisbowerhaws.com

*Counsel for Appellants – Intervenors*

July 12, 2023

## CERTIFICATE OF COMPLIANCE

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**: No. 23-35153

I am the attorney or self-represented party.

**This brief contains 11,532 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRCP 32(f). The brief's type size and typeface comply with FRCP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

Dated: July 12, 2023        */s/ Daniel W. Bower*
                            Daniel W. Bower

                            *Counsel for Appellants – Intervenors*

60

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6.

The undersigned attorney states the following:

[X] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

***United States of America v. State of Idaho*, Case No. 23-35450:** Appealing district court's preliminary injunction of section 622.

DATED: July 12, 2023

Respectfully submitted,

*/s/ Daniel W. Bower*
Daniel W. Bower
Morris Bower & Haws
12550 W. Explorer Drive
Suite 100
Boise, ID 83713
208-345-3333
dbower@morrisbowerhaws.com

*Counsel for Appellants – Intervenors*

61