No. 23-35153

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

───────────────────

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STATE OF IDAHO,

Defendant-Appellee,

v.

MIKE MOYLE, Speaker of the Idaho House of Representatives; CHUCK
WINDER, President Pro Tempore of the Idaho Senate; THE SIXTY-SEVENTH
IDAHO LEGISLATURE, Proposed Intervenor-Defendants,

Movants-Appellants.

───────────────────

On Appeal from the United States District Court
for the District of Idaho

───────────────────

**BRIEF FOR THE UNITED STATES**

───────────────────

*Of Counsel:*

SAMUEL BAGENSTOS
*General Counsel*

PAUL R. RODRÍGUEZ
*Deputy General Counsel*

DAVID HOSKINS
*Supervisory Litigation Attorney*

JESSICA BOWMAN
MELISSA HART
*Attorneys*

*U.S. Department of Health
and Human Services*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
General*

JOSHUA D. HURWIT
*United States Attorney*

MICHAEL S. RAAB
McKAYE L. NEUMEISTER
NICHOLAS S. CROWN
*Attorneys, Appellate Staff
Civil Division, Room 7325
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
202-305-1754*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................iii

INTRODUCTION ............................................................................................1

STATEMENT OF JURISDICTION ................................................................3

STATEMENT OF THE ISSUES.....................................................................3

PERTINENT STATUTES ...............................................................................3

STATEMENT OF THE CASE.........................................................................4

    A.    The United States's lawsuit.................................................................4

    B.    The Idaho Legislature's participation in this litigation................................8

SUMMARY OF ARGUMENT.......................................................................16

STANDARD OF REVIEW ............................................................................19

ARGUMENT ..................................................................................................20

I.    The Court Should Dismiss This Interlocutory Appeal For Lack Of Jurisdiction. ....................................................................................20

II.    The District Court Correctly Denied Intervention As Of Right. ......................25

    A.    The Idaho Legislature lacks a significant protectable interest. ................27

    B.    The State of Idaho adequately represents the Idaho Legislature's alleged interest. ................................................................................31

    C.    The district court's decision is fully consistent with *Berger v. North Carolina State Conference of the NAACP*..........................................38

CONCLUSION ..............................................................................................45

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Alsea Valley All. v. Department of Commerce,*
358 F.3d 1181 (9th Cir. 2004) ............................................................ 16, 20, 21

*Arakaki v. Cayetano,*
324 F.3d 1078 (9th Cir. 2003) ........................................ 12, 31, 32, 33, 37, 38

*Arrington v. Wong,*
237 F.3d 1066 (9th Cir. 2001) ...................................................................... 4

*Bannister v. Davis,*
140 S. Ct. 1698 (2020) .........................................................................24-25, 25

*Bauman v. U.S. Dist. Court,*
557 F.2d 650 (9th Cir. 1977) ......................................................................24

*Berger v. North Carolina State Conference of the NAACP,*
142 S. Ct. 2191 (2022) ....................................... 8, 11, 12, 17, 18, 19, 27, 29, 30,
38, 39, 40, 41, 42, 43, 44, 45

*Burlington N. & Santa Fe Ry. Co. v. Vaughn,*
509 F.3d 1085 (9th Cir. 2007) ...................................................................... 23

*California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.,*
54 F.4th 1078 (9th Cir. 2022) ...................................................................... 37

*California Dep't of Water Res. v. Powerex Corp.,*
533 F.3d 1087 (9th Cir. 2008) .....................................................................20

*California ex rel. Lockyer v. United States,*
450 F.3d 436 (9th Cir. 2006) ...................................................................... 36

*Callahan v. Brookdale Senior Living Cmtys., Inc.,*
42 F.4th 1013 (9th Cir. 2022) .................................... 17, 18, 19, 26, 31, 32, 33, 35, 44

*Cameron v. EMW Women's Surgical Ctr.,*
142 S. Ct. 1002 (2022) .....................................................................................45

*Churchill County v. Babbitt,*
150 F.3d 1072 (9th Cir. 1998), *amended on other grounds,*
158 F.3d 491 (9th Cir. 1998), *abrogated on other grounds,*
*Wilderness Soc'y v. U.S. Forest Serv.,* 630 F.3d 1173 (9th Cir. 2011) .............................. 23

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
   647 F.3d 893 (9th Cir. 2011) ........................................................ 26, 27, 34, 36

*Cooper v. Newsom,*
   13 F.4th 857 (9th Cir. 2021) ........................................................ 28

*CPC Patent Techs. Pty Ltd. v. Apple, Inc.,*
   34 F.4th 801 (9th Cir. 2022) ........................................................ 20

*Credit Suisse v. U.S. Dist. Court,*
   130 F.3d 1342 (9th Cir. 1997) ........................................................24

*Department of Fair Emp't & Hous. v. Lucent Techs., Inc.,*
   642 F.3d 728 (9th Cir. 2011) ........................................................ 30, 43

*Donnelly v. Glickman,*
   159 F.3d 405 (9th Cir. 1998) ........................................................ 21, 22

*Draper v. Chiapuzio,*
   9 F.3d 1391 (9th Cir. 1993) ........................................................ 6

*Gallardo ex rel. Vargas v. Del Puerto Hosp.,*
   98 F.3d 1202 (9th Cir. 1996) ........................................................4

*GenCorp, Inc. v. Olin Corp.,*
   477 F.3d 368 (6th Cir. 2007) ........................................................29

*Karcher v. May,*
   484 U.S. 72 (1987) ........................................................ 40

*Kris Petroleum Ltd. v. Stoddard,*
   221 F.2d 801 (9th Cir. 1955) ........................................................16, 20

*League of United Latin Am. Citizens v. Wilson,*
   131 F.3d 1297 (9th Cir. 1997) ........................................................ 33, 34, 35

*McElmurry v. U.S. Bank Nat'l Ass'n,*
   495 F.3d 1136 (9th Cir. 2007) ........................................................ 24

*McQuillion v. Duncan,*
   342 F.3d 1012 (9th Cir. 2003) ........................................................ 19, 24

*Mitchell v. United States,*
   958 F.3d 775 (9th Cir. 2020) ........................................................ 25

iv

*National Fed'n of Indep. Bus. v. Sebelius,*
   567 U.S. 519 (2012) ................................................................. 35

*North Carolina State Conference of NAACP v. Cooper*:
   332 F.R.D. 161 (M.D.N.C. 2019) ............................................... 38
   No. 1:18CV1034, 2019 WL 5840845 (M.D.N.C. Nov. 7, 2019) .............................. 38
   999 F.3d 915 (4th Cir. 2021) ................................................... 40

*Northwest Forest Res. Council v. Glickman,*
   82 F.3d 825 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996) ..................... 11

*Perry v. Proposition 8 Official Proponents,*
   587 F.3d 947 (9th Cir. 2009) ......................................... 26, 33, 36

*Planned Parenthood Great Nw. v. State,*
   522 P.3d 1132 (Idaho 2023) ....................................... 1, 6, 7

*Planned Parenthood of Wis., Inc. v. Kaul,*
   942 F.3d 793 (7th Cir. 2019) ................................................. 30

*Prete v. Bradbury,*
   438 F.3d 949 (9th Cir. 2006) ........................................ 20, 21

*Save Bull Trout v. Williams,*
   51 F.4th 1101 (9th Cir. 2022) ............................................... 27

*Stringfellow v. Concerned Neighbors in Action,*
   480 U.S. 370 (1987) ...................................... 16, 20, 21, 22, 23, 24

*United States v. City of Los Angeles,*
   288 F.3d 391 (9th Cir. 2002) ......................................... 26, 33

*United States v. Vonn,*
   535 U.S. 55 (2002) ........................................................... 23

*United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.,*
   945 F.3d 1237 (9th Cir. 2020) ............................................... 19

*Van Hoomissen v. Xerox Corp.,*
   497 F.2d 180 (9th Cir. 1974) ................................................. 20

*Venegas v. Skaggs,*
   867 F.2d 527 (9th Cir. 1989), *aff'd sub nom.*
   *Venegas v. Mitchell*, 495 U.S. 82 (1990) ........................................ 30

*Victim Rights Law Ctr. v. Rosenfelt*,
   988 F.3d 556 (1st Cir. 2021), *cert. denied sub nom.*
   *Foundation for Individual Rights in Educ. v. Victim Rights Law Ctr.*,
   142 S. Ct. 754 (2022) ........................................................................... 35, 36

*Wakefield v. ViSalus, Inc.*,
   51 F.4th 1109 (9th Cir. 2022), *cert. denied*,
   143 S. Ct. 1756 (2023) .................................................................. 29, 30, 43

*Wilderness Soc'y v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) .............................................................. 17, 26

*Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula*,
   41 F.4th 767 (6th Cir. 2022) ....................................................................... 37

**Statutes:**

Emergency Medical Treatment and Labor Act (EMTALA):
   42 U.S.C. § 1395dd ....................................................................................1
   42 U.S.C. § 1395dd(a) ................................................................................5
   42 U.S.C. § 1395dd(b)(1) ...........................................................................5
   42 U.S.C. § 1395dd(b)(2) ....................................................................... 5, 6,
   42 U.S.C. § 1395dd(c)(1)(A)(ii) .................................................................5
   42 U.S.C. § 1395dd(c)(2)(A) ......................................................................5
   42 U.S.C. § 1395dd(c)(2)(B) ......................................................................5
   42 U.S.C. § 1395dd(d) ................................................................................4
   42 U.S.C. § 1395dd(e)(1)(A) ......................................................................5
   42 U.S.C. § 1395dd(e)(2) ............................................................................4
   42 U.S.C. § 1395dd(e)(3)(A) ......................................................................5
   42 U.S.C. § 1395dd(f) ............................................................................ 4, 6

28 U.S.C. § 1291 .............................................................. 3, 16, 20, 22, 24

28 U.S.C. § 1292(a)(1) ...............................................................................24

28 U.S.C. § 1292(b) ....................................................................................24

28 U.S.C. § 1331 ...........................................................................................3

28 U.S.C. § 1345 ...........................................................................................3

28 U.S.C. § 2403 .................................................................................44

28 U.S.C. § 2403(b) ............................................................................44

42 U.S.C. § 1395cc(a)(1)(I)(i) ..............................................................4

Idaho Code § 18-604(1)(c) ..................................................................6

Idaho Code § 18-622 ...........................................................1, 6, 15, 33

Idaho Code § 18-622(1) .......................................................................7

Idaho Code § 18-622(2) .......................................................................1

Idaho Code § 18-622(2)(a)(i) ...............................................................6

Idaho Code § 18-622(2)(b) ..................................................................6

Idaho Code § 18-8801(5) .....................................................................7

Idaho Code § 67-465 ...........................................16, 17, 28, 30, 43

Idaho Code § 67-1401 ..........................................................................8

Idaho Code § 67-1401(1) .............................................................27, 41

N.C. Gen Stat. § 120-32.6(b) ...........................................30-31, 39, 43

## Regulations:

42 C.F.R. § 489.24(a)(1)(i) ..................................................................5

42 C.F.R. § 489.24(a)(1)(ii) .................................................................5

42 C.F.R. § 489.24(d)(2)(i) ..................................................................5

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ................................................ 14

Fed. R. App. P. 4(a)(4)(A) ............................................... 25

Fed. R. Civ. P. 19(a) ...................................................... 25

Fed. R. Civ. P. 24 ............................................ 23, 26, 31

Fed. R. Civ. P. 24(a) .......................................................... 8

Fed. R. Civ. P. 24(a)(2) .................................... 25, 27, 34

Fed. R. Civ. P. 24(b) ......................................... 8, 10, 45

Fed. R. Civ. P. 59(e) ............................. 10, 19, 24, 25, 29

Fed. R. Civ. P. 60(b) ..................................................... 25

**Legislative Materials:**

H.R. 326, 67th Leg., 1st Reg. Sess. (Idaho 2023),
    https://perma.cc/C9JR-JNUF ................................. 16, 28

H.R. Rep. No. 99-241, pt. 3 (1985) ................................. 4, 6

## INTRODUCTION

This is an interlocutory appeal in which an intervenor seeks review of decisions that denied intervention as of right, but granted permissive intervention. This Court should either dismiss for lack of appellate jurisdiction or affirm.

The underlying litigation involves one of the most restrictive abortion laws in the nation. The State of Idaho enacted a statute so sweeping that the Idaho Supreme Court calls it a "Total Abortion Ban." *Planned Parenthood Great Nw. v. State*, 522 P.3d 1132, 1147 (Idaho 2023). Among other things, Idaho's law makes it a felony to terminate a patient's pregnancy unless doing so would be "necessary" to prevent the patient's "death." Idaho Code § 18-622(2).

Idaho thus criminalizes care that, in certain instances, physicians deem necessary to stabilize a medical emergency that can arise during pregnancy. Examples include premature pre-term rupture of membranes (PPROM), pre-eclampsia, and infections. If left untreated, these conditions could lead to an uncertain risk of death, or irreversible injuries like sepsis requiring limb amputation, uncontrollable bleeding requiring hysterectomy, or kidney failure requiring lifelong dialysis. The state statute purports to prohibit such medically necessary care even though, in certain cases, federal law requires it. *See* Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd.

Before Idaho Code § 18-622 took effect, the United States filed suit to challenge Idaho's statute insofar as it directly conflicts with federal law and thus violates the Supremacy Clause. The named defendant is the State of Idaho. The Idaho Attorney

General appeared on the State's behalf and has defended Idaho's abortion law throughout this litigation.

Nonetheless, several Idaho lawmakers (the Legislature) sought to intervene with private counsel. The district court denied the Legislature's motion to intervene as of right (without prejudice) and granted its alternative request to permissively intervene (with certain conditions). Like the State, the Legislature has participated at each step of this case.

In doing so, the Legislature has pursued a litigation strategy virtually identical with the State's. When the United States moved for a preliminary injunction, the State and Legislature opposed, raising both factual and legal arguments. When the district court held a hearing, the State and Legislature presented argument along the same lines. When the district court granted a preliminary injunction, the State and Legislature moved for reconsideration, raising largely parallel grounds. When those reconsideration motions were fully briefed, the State and Legislature asked the district court to delay ruling to allow supplemental briefing, which also presented similar views. And when the district court denied reconsideration, the State and Legislature appealed, again raising similar arguments. *See* No. 23-35440 (9th Cir.) (consolidated with No. 23-35450 (9th Cir.)).

The Court lacks jurisdiction over this separate intervention appeal. Settled law precludes interlocutory review here because, although the district court denied intervention as of right without prejudice, it also *granted* permissive intervention.

This appeal fares no better on the merits. To intervene as of right, the Idaho Legislature must show (1) a significantly protectable interest, that is (2) not adequately represented by the State of Idaho. But the Legislature cannot make either showing: It has no interest distinct from the State (of which it is a part), and the State is vindicating any such interest by vigorously contesting this lawsuit (much like the Legislature). And contrary to the Legislature's assertions, the district court cited and correctly applied relevant case law.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1345. The Legislature invokes appellate jurisdiction under 28 U.S.C. § 1291, but jurisdiction over this interlocutory appeal is contested. *See infra* pp. 20-24.

## STATEMENT OF THE ISSUES

1.      Whether the Court lacks jurisdiction over this interlocutory appeal arising from the partial grant of intervention.

2.      Whether the district court correctly denied intervention as a matter of right.

## PERTINENT STATUTES

Pertinent statutes are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.     The United States's lawsuit.

On August 2, 2022, the United States filed suit against the State of Idaho, challenging Idaho's abortion ban as preempted under the Supremacy Clause and EMTALA's express preemption provision. *See* 3-ER-346; 42 U.S.C. § 1395dd(f). The United States has maintained, and the district court agreed, that Idaho's law is preempted to the extent that it forbids emergency medical treatment that federal law guarantees. *See* 2-ER-166–204; SER-3–14.

**1.**     Congress enacted EMTALA in 1986, based on "a growing concern about the provision of adequate emergency room medical services to individuals who seek care, particularly as to the indigent and uninsured." H.R. Rep. No. 99-241, pt. 3, at 5 (1985). "The 'overarching purpose of EMTALA is to ensure that patients, particularly the indigent and underinsured, receive adequate emergency medical care.'" *Arrington v. Wong*, 237 F.3d 1066, 1073-74 (9th Cir. 2001) (alterations omitted) (quoting *Gallardo ex rel. Vargas v. Del Puerto Hosp.*, 98 F.3d 1202, 1205 (9th Cir. 1996)). EMTALA applies to hospitals that have an emergency department and participate in Medicare, 42 U.S.C. § 1395dd(e)(2), and provides for civil enforcement, *id.* § 1395dd(d). Compliance with EMTALA is a condition of Medicare funding. *Id.* § 1395cc(a)(1)(I)(i).

Under EMTALA, when an individual presents to a Medicare-participating emergency department and requests examination or treatment, the hospital must provide an appropriate medical-screening examination "to determine whether or not an emergency

4

medical condition" exists. 42 U.S.C. § 1395dd(a); *see* 42 C.F.R. § 489.24(a)(1)(i). An emergency medical condition exists when an individual's "health" is in "serious jeopardy" or the patient risks "serious impairment to bodily functions" or "serious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd(e)(1)(A).

If the hospital detects an emergency medical condition, it "must provide either— (A) … for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility in accordance with" certain requirements. 42 U.S.C. § 1395dd(b)(1); 42 C.F.R. § 489.24(a)(1)(ii).[1] EMTALA defines "'to stabilize'" as "provid[ing] such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." 42 U.S.C. § 1395dd(e)(3)(A).

EMTALA's protections apply to individuals who are pregnant. In some situations, a pregnant individual may present to a hospital with an emergency medical

---

[1] As relevant, the hospital meets its obligations if it "offers the individual" examination and treatment and "informs the individual (or a person acting on the individual's behalf) of the risks and benefits," yet "the individual (or a person acting on the individual's behalf) refuses" treatment. 42 U.S.C. § 1395dd(b)(2). The hospital may also "admit[] th[e] individual as an inpatient in good faith in order to stabilize the emergency medical condition." 42 C.F.R. § 489.24(d)(2)(i). A hospital may "transfer" the individual only if the transfer meets certain requirements, *e.g.*, that the medical benefits of transferring outweigh the risks, 42 U.S.C. § 1395dd(c)(1)(A)(ii), and that the transfer is "appropriate" when the transferring hospital receives confirmation that the receiving facility has agreed to the transfer and has the space and qualified personnel to treat the individual, *id.* § 1395dd(c)(2)(A), (B).

condition (such as PPROM, pre-eclampsia, and placental abruption) that meets EM-TALA's criteria and for which an abortion would prevent a *risk* of death—even if a provider cannot determine that pregnancy termination is *necessary* to prevent death. 2-ER-167, 173–176. Similarly, such emergency conditions could lead to non-lethal but irreversible harms to the pregnant individual absent abortion care, including "severe sepsis requiring limb amputation, uncontrollable uterine hemorrhage requiring hyster-ectomy, kidney failure requiring lifelong dialysis, hypoxic brain injury," or strokes. 2-ER-167, 173–176. In those circumstances, EMTALA requires that hospitals provide that stabilizing treatment upon informed consent. 42 U.S.C. § 1395dd(b)(2).

EMTALA expressly preempts "any State or local law requirement" that "directly conflicts with a requirement of this section." 42 U.S.C. § 1395dd(f); *see Draper v. Chia-puzio*, 9 F.3d 1391, 1393-94 (9th Cir. 1993) (per curiam); *see also* H.R. Rep. No. 99-241, pt. 3, at 5 (expressing desire to add "federal sanctions" as a supplement to state-law duties "to provide necessary emergency care").

**2.**     Idaho Code § 18-622 was poised to take effect on August 25, 2022. *See Planned Parenthood Great Nw. v. State*, 522 P.3d 1132, 1158 (Idaho 2023). The Idaho Su-preme Court describes the statute as a "Total Abortion Ban." *Id.* at 1147. Unless the patient furnishes a police report that her pregnancy (still within the first trimester) re-sulted from "an act of rape or incest," Idaho Code § 18-622(2)(b), Idaho allows only those abortions "necessary to prevent the death of the pregnant woman," *id.* § 18-622(2)(a)(i), or to "remov[e] … an ectopic or molar pregnancy," *id.* § 18-604(1)(c).

6

Otherwise, Idaho's law makes it a felony punishable by two-to-five years' imprisonment—and by the suspension or revocation of the provider's professional license—to "perform[]," "attempt[] to perform," or "assist[] in performing or attempting to perform" treatment that involves terminating a pregnancy. *Id.* § 18-622(1).

The Idaho Supreme Court has recognized that § 18-622's necessary-to-prevent-death standard is narrower than the language Congress employed in EMTALA. In *Planned Parenthood*, the court noted that § 18-622 does not include "the broader 'medical emergency' exception" to liability that is present in another Idaho statute. 522 P.3d at 1196.[2] That omission underscores that § 18-622 is narrower than EMTALA because the medical-emergency exception would have "appl[ied] in nearly identical circumstances in which EMTALA might preclude the Total Abortion Ban from being enforced." *Id.* at 1158; *see id.* at 1207 (observing that "EMTALA uses language *substantially similar* to" the medical-emergency exception absent from § 18-622).

3.      In addition to filing suit, 3-ER-346, the United States moved for preliminary relief before § 18-622 took effect to block Idaho from enforcing the statute against emergency healthcare that EMTALA requires—that is, treatments that physicians deem

---

[2] That "medical emergency" exception would cover any "condition that, in reasonable medical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function." Idaho Code § 18-8801(5). Section 18-622, the law the United States has challenged, "supersede[s]" the statute containing the "medical emergency" exception. *Planned Parenthood*, 522 P.3d at 1161.

7

necessary to stabilize an emergency medical condition. The district court preliminarily enjoined § 18-622's application to the extent it directly conflicts with EMTALA. 2-ER-166–204. The preliminary injunction is the subject of pending, consolidated appeals. *See* Nos. 23-35440, 23-35450 (9th Cir.).

**B.    The Idaho Legislature's participation in this litigation.**

The Complaint named one defendant: the State of Idaho. 3-ER-349. Consistent with its "duty" to "perform all legal services for the state and to represent the state … in all courts," Idaho Code § 67-1401, the Idaho Attorney General's Office appeared for the State. The Idaho Legislature, represented by private retained counsel, also moved to intervene. *See* 3-ER-319, 340. From the outset, the Legislature has participated at each step of this litigation.

1.    In its intervention motion, 3-ER-340, the Legislature invoked both Rule 24(a)(2), which governs intervention as a matter of right, and Rule 24(b), which governs permissive intervention.[3] The Legislature argued that the Supreme Court's decision in *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191 (2022)—which

---

[3] *See* Fed. R. Civ. P. 24(a) (providing that, "[o]n timely motion, the court must permit anyone to intervene who[] … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest"); Fed. R. Civ. P. 24(b) (providing that, "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact," if intervention would not "unduly delay or prejudice the adjudication of the original parties' rights").

held that certain North Carolina legislators were entitled to intervene as of right to defend a state law that the existing defendants had declined to support—"requires a holding that the Legislature may intervene in this civil action as a matter of right." 3-ER-325. Were it to intervene, the Legislature added, it would present evidence in the preliminary-injunction proceedings on a factual question: whether so-called "Relevant Abortions" were occurring in Idaho. *E.g.*, 3-ER-279.

On August 13, 2022, the district court granted the Legislature's motion in part and denied it in part. 1-ER-13–32. It denied intervention as of right because the Legislature had "failed to show that it brings a distinct state interest to bear on this litigation that the State cannot adequately represent." 1-ER-24. The Legislature, moreover, "presented no credible argument that it itself is distinct from … 'the State,' either formally or functionally for purposes [of] this litigation." 1-ER-25. The court also found *Berger* "readily distinguishable" because, among other things, the State was "fully on board in defending the law," and "by virtue of being part of the State of Idaho itself, the Idaho Legislature is *already* a party." 1-ER-25–26 (alterations and quotation marks omitted); *see* 1-ER-27 ("[N]ot a speck of evidence exists that the State and the Legislature's interests diverge in any real and practical sense."). But the court stated that the Legislature could renew its motion "if during the course of this litigation the facts develop such that it becomes clear the State and Legislature's interests diverge, and the State can no longer adequately represent the Legislature's interests." 1-ER-14; *accord* 1-ER-27.

9

The district court granted the Legislature's alternative request to permissively intervene. 1-ER-27–32; *see* Fed. R. Civ. P. 24(b). Given the Legislature's assertion that it would "show the holes in the factual foundation" of the United States's preliminary-injunction motion and "call witnesses at the preliminary injunction hearing to present evidence of whether 'Relevant Abortions' are occurring in Idaho's Medicare-funded emergency rooms," the court permitted the Legislature to intervene on those questions. 1-ER-29–30 (footnote omitted) (quotation marks omitted).

**2.** In October 2022—almost two months after the district court's order granting partial intervention—the Legislature renewed its motion to intervene as of right, citing the court's "invitation" to renew its request. 2-ER-81. The Legislature contends here that it moved "under Federal Rule of Civil Procedure (FRCP) 59(e)." Br. 1; *accord* Br. 33 n.8. In its renewed motion, the Legislature reprised its argument that *Berger* compelled intervention as of right, and asserted that the State was inadequately representing the Legislature's interests because "events ha[d] shown that the [State] has pursued a different course than the Legislature." 2-ER-87.

On February 3, 2023, the district court denied the Legislature's renewed request. 1-ER-2–12. The court determined again that the Idaho Attorney General adequately represented the Idaho Legislature's asserted interest in defending the same law. 1-ER-2–3. As the court explained, the State had "mounted a robust defense of the abortion ban," including by "vigorously opposing the United States' motion for preliminary injunction in its briefs and in oral argument and," after the preliminary injunction issued,

in "seeking to reverse th[e] Court's ruling granting the injunction." 1-ER-6; *see infra* pp. 13-15.

The district court also concluded that the Legislature's criticisms of the State's tactics—such as the State's choice not "to object to the United States' request for a two-week extension to respond to the Legislature's motion to reconsider" the injunction—were "procedural quibbles" that did not suffice under Rule 24(a)(2). 1-ER-9. The court further rejected the Legislature's repeated claims that "the State's supposed delays" in the case had any effect on the court's decision-making, particularly given its heavy caseload. 1-ER-10 (quotation marks omitted). And any substantive differences between the State and Legislature, the court explained, were at most "minor" disagreements that would "reflect[] only a difference in strategy," which would "not demonstrate such a divergence of interests to justify the Legislature's intervention of right." 1-ER-11 (alteration in original) (quoting *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996)).

The district court likewise reexamined the Supreme Court's decision in *Berger* and once more concluded that it did not dictate a different outcome. The district court noted "a key distinction between this case and *Berger*: this case does not involve a plaintiff who has chosen 'to name this or that official defendant,' thus failing to 'capture all relevant state interests.'" 1-ER-8 (quoting *Berger*, 142 S. Ct. at 2203). "Rather," the court continued, "the United States has sued the State of Idaho, and the State's interests, by definition, encompass the Legislature's interests." 1-ER-8. And recalling the Supreme

Court's observation that "[a]t some point, too, it may be that the interests of existing parties will come to overlap fully with the interests of any remaining proposed intervenor," the district court explained that the litigation thus far had shown that, "both formally and functionally, this *is* the case where the interests of the existing party overlap fully with the interests of the proposed intervenor." 1-ER-9 (quoting *Berger*, 142 S. Ct. at 2205) (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)); *see also* 1-ER-9–11 (reciting similarities in State's and Legislature's arguments and strategies).

Although it denied the Legislature's renewed motion to intervene as of right, the district court repeated that it had "allow[ed] the Legislature to permissively intervene to oppose the United States' motion for preliminary injunction." 1-ER-11. The court thus stated that it would "fully consider the Legislature's motion for reconsideration" of the injunction. 1-ER-11.

**3.** As a permissive intervenor in this case, the Legislature's participation has been extensive.

**a.** The Legislature answered the Complaint. 3-ER-310. It opposed a preliminary injunction—including by briefing legal arguments beyond the "factual" questions that the Legislature had previewed. *See, e.g.*, 3-ER-270–273 (discussing the "legal understanding" of EMTALA and Idaho law (capitalizations omitted)).[4] And it participated in

---

[4] The day after it filed its opposition to the preliminary-injunction motion (3-ER-261), the Legislature sought leave to file a second brief containing additional "legal arguments." 2-ER-224. The district court denied the Legislature's motion for leave and

*Continued on next page.*

the preliminary-injunction hearing, again presenting arguments beyond factual issues. *See, e.g.*, SER-102–114 (discussing previously unmentioned provisions of EMTALA); *see* SER-107–109 (discussing scope of proposed order). After the injunction issued, the Legislature moved for reconsideration, this time raising only legal arguments. 2-ER-139–161.

For its part, the State has raised many of the same legal arguments.[5] Both the State and Legislature have contended, for example, that:

- the United States lacks a cause of action, 2-ER-122, 244 (State); 2-ER-154–155 (Legislature);

- the Spending Clause forecloses relief, 2-ER-124–127, 256 (State); 2-ER-156–158, 3-ER-273 (Legislature);

- the Tenth Amendment forecloses relief, 2-ER-125–127 (State); 2-ER-158–159 (Legislature);

- the text of EMTALA does not encompass pregnancy termination, 2-ER-110–114 (State); 2-ER-145–150 (Legislature);

- the text of Idaho's abortion law does not conflict with EMTALA, 2-ER-114–121, 246–252 (State); 2-ER-151–152, 3-ER-266–267 (Legislature); and

- the factual record does not show an actual conflict between federal and state law, 2-ER-248-250 (State); 3-ER-267–273 (Legislature).

---

"decline[d] at th[at] juncture to modify the conditions it imposed" in its original grant of intervention. 2-ER-205. The court observed that the Legislature's motion for leave was untimely, would flout the local rules governing briefing page limits, and would prejudice the United States (whose reply was due imminently). 2-ER-205.

[5] In many instances, the State and Legislature raised their parallel arguments for the first time at the reconsideration stage (or later); the district court concluded that such arguments were not properly before it. SER-7.

The similarities between the State and Legislature extend to other litigation strategies as well. Both the State and Legislature declined to immediately appeal the preliminary injunction, electing instead to seek reconsideration. 2-ER-131, 162. Once their reconsideration motions were fully briefed, both the State and Legislature requested that the district court "[s]tay" its reconsideration decision to allow supplemental briefing. *See* SER-45. And in their supplemental submissions, both the State and Legislature argued that a state-court decision undermined the injunction. *See* SER-15 (State); SER-29 (Legislature).

**b.** The district court denied the Legislature and State's motions to reconsider the preliminary injunction, and both the State and Legislature appealed. *See* Nos. 23-35440, 23-35450 (9th Cir.). The State was the first to seek appellate review; the Legislature, by contrast, waited 60 days, the maximum permitted. *See id.*; Fed. R. App. 4(a)(1)(B). That same day—and by then nearly 11 months after the preliminary injunction had issued—the Legislature moved the district court to stay the injunction pending appeal. *See* No. 23-35450, Dkt. No. 29, Ex. 3. Rather than await a decision (and at that point nearly a year after the district court had granted the injunction), the Legislature moved for a stay in this Court. *See id.*, Dkt. No. 29. The United States opposed both motions, which remain pending.

This Court consolidated the State and Legislature's parallel preliminary-injunction appeals. *See* Order, No. 23-35440, Dkt. No. 9. Consonant with their harmony in the district court, the State and Legislature filed opening briefs echoing the same points.

14

*Compare* Opening Brief for the Idaho Legislature, *United States v. Idaho*, No. 23-35440 (9th Cir. Aug. 7, 2023), Dkt. No. 10 (Leg. PI Br.), *with id.*, Opening Brief for State of Idaho (State PI Br.), Dkt. No. 12-1. For example, both argue that:

- EMTALA's text does not preempt Idaho Code § 18-622, *compare* State PI Br. 18-28, *with* Leg. PI Br. 24-35;

- EMTALA does not "mandate abortions," *compare* State PI Br. 19-22, 28-34, *with* Leg. PI Br. 35-54;

- the preliminary injunction is inconsistent with "principles of federalism," *compare* State PI Br. 26-28, *with* Leg. PI Br. 57;

- the district court's interpretation of EMTALA would violate the Spending Clause and the Tenth Amendment, *compare* State PI Br. 32, *with* Leg. PI Br. 60-66;

- the injunction inflicts irreparable harm on "[t]he State," *compare* State PI Br. 33-34, *with* Leg. PI Br. 66, and

- the "public interest" lies in "allowing Idaho to lawmake for themselves [sic]," State PI Br. 35; *accord* Leg. PI Br. 72 (asserting public interest in allowing "Idaho's elected officials [to] lawfully exercise[] their authority to adopt laws").

The State expressly "join[ed]" several "arguments made by the Idaho Legislature" to "avoid duplicative briefing." State PI Br. 32.

4.     The Legislature separately appealed the district court's second intervention order. The notice of appeal, filed on March 2, 2023, identifies only the February 3, 2023 order; it does not identify the court's initial August 13, 2022 intervention order. 2-ER-363; *see* Br. 33 n.8.

15

After it had initiated this interlocutory appeal, the Legislature amended an Idaho statute purportedly "to clarify the Legislature's authority to intervene in suits challenging state law." Br. 12; *see* H.R. 326, 67th Leg., 1st Reg. Sess. (Idaho 2023), https://perma.cc/C9JR-JNUF (amending Idaho Code § 67-465). That statute now provides that the Legislature "may" seek to "intervene … as agents of the state of Idaho." Idaho Code § 67-465. The district court had no opportunity to address the amendments when resolving the Legislature's intervention request.

## SUMMARY OF ARGUMENT

I.    The Court should dismiss this interlocutory appeal for lack of jurisdiction. The Legislature invokes 28 U.S.C. § 1291, but that statute applies to "final decisions of the district courts." The district court's ruling is not final because it *granted* permissive intervention. An "order permitting intervention is not a final order" and "'not among those interlocutory orders which are made appealable by statute.'" *Alsea Valley All. v. Department of Commerce*, 358 F.3d 1181, 1187 (9th Cir. 2004) (quoting *Kris Petroleum Ltd. v. Stoddard*, 221 F.2d 801, 802 (9th Cir. 1955) (per curiam)).

It is of no moment that the district court denied the Legislature's alternative request to intervene as of right. A decision "granting permissive intervention but denying intervention as of right" is not "immediately appealable." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 372 (1987). Rather, to support appellate jurisdiction here, the district court's order must have constituted "a *complete* denial of the right to participate." *Id.* at 378 (emphasis added). The Legislature makes no effort to show a complete

denial. For good reason: The Legislature has participated throughout the proceedings—which have not progressed beyond the preliminary-injunction stage—as a permissive intervenor.

**II.** On the merits, the district court correctly denied intervention as of right. Under Rule 24(a)(2), the Legislature had to show a "significantly protectable interest" that would be "'inadequately represented by'" the State. *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022) (quoting *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011)). It did neither.

**A.** The Legislature lacks a significantly protectable interest. This lawsuit "capture[s] all relevant state interests" because the federal government "sued the State." *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191, 2203 (2022). The Idaho Legislature is part of the State of Idaho, so it is already a party. Indeed, the Legislature asserts (Br. 5) an interest that is identical to the State's: an "interest in the validity of" Idaho law.

The Legislature does not advance its argument by citing a state intervention statute, Idaho Code § 67-465. That law is inapposite for several reasons: The Legislature strategically amended § 67-465 mid-appeal and it is not properly before the Court; the state statute cannot override the Federal Rules of Civil Procedure; and even in its newly amended form, § 67-465 does not compel intervention because it does not suggest the Legislature is a *necessary* party—it speaks instead in permissive terms.

17

**B.** The Legislature's appeal fails for an independent reason: Even if the Idaho Legislature could identify a protectable interest, the State of Idaho would adequately represent it. The State and Legislature have pursued identical goals through virtually identical strategies.

Any supposed daylight between their approaches does not require granting intervention as of right. This Court has repeatedly rejected similar efforts to leverage alleged disputes over litigation strategy or tactics. *E.g.*, *Callahan*, 42 F.4th at 1021. And this case is nothing like those in which the Court has found intervention appropriate—*i.e.*, when a named defendant sought an outcome that would have injured the proposed intervenor.

**C.** The district court faithfully applied *Berger*, 142 S. Ct. 2191. In *Berger*, the Supreme Court determined that North Carolina's legislative leaders could intervene as of right to defend a state voter-identification law. *Id.* at 2206. The Court emphasized that the named defendants (various officials who opposed the law) were not "the State" and not willing to defend state law, *id.* at 2203-04, and that a separate state statute deemed the prospective intervenors "necessary parties," *id.* at 2202 (quotation marks omitted). Here, by contrast, the defendant is the State of Idaho, the State has mounted a vigorous defense that encompasses the Legislature's asserted interest, and Idaho's intervention law is permissive, not mandatory.

The Legislature misunderstands *Berger* as an inflexible rule automatically requiring intervention here. That interpretation is impossible to reconcile with *Berger* itself, which

explained that the remarkable facts before it "illustrate[d] how divided state governments *sometimes* warrant participation by multiple state officials in federal court." *Berger*, 142 S. Ct. at 2205 (emphasis added). The Supreme Court noted that intervention may *not* be appropriate when "the interests of existing parties … overlap fully with the interests of any remaining proposed intervenor." *Id.* Having presided over the State and Legislature's duplicative efforts here, the district court properly perceived that "this *is* the case where the interests of the existing party overlap fully with the interests of the proposed intervenor." 1-ER-9.

## STANDARD OF REVIEW

This Court reviews whether it has appellate jurisdiction de novo. *United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.*, 945 F.3d 1237, 1241 (9th Cir. 2020).

The Court generally "review[s] de novo a district court's denial of a motion to intervene as a matter of right," except for "a denial based on timeliness, which is reviewed for abuse of discretion." *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1019 (9th Cir. 2022). But insofar as the Legislature challenges an order "denying [its] motion for reconsideration under FRCP 59(e)," Br. 33 n.8; *see* Br. 1, the Court reviews only "for abuse of discretion," *McQuillion v. Duncan*, 342 F.3d 1012, 1014 (9th Cir. 2003).

## ARGUMENT

## I.   The Court Should Dismiss This Interlocutory Appeal For Lack Of Jurisdiction.

To show appellate jurisdiction, the Legislature relies (Br. 1) on 28 U.S.C. § 1291. But that provision does not apply here.

**A.1.**   Section 1291 grants jurisdiction over appeals from "final decisions of the district courts." A decision is "final" if it "places the parties 'effectively out of federal court.'" *CPC Patent Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 805 (9th Cir. 2022) (alterations omitted) (quoting *California Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1094 (9th Cir. 2008)).

"An order permitting intervention is not a final order and is not appealable." *Alsea Valley All. v. Department of Commerce*, 358 F.3d 1181, 1187 (9th Cir. 2004) (quoting *Van Hoomissen v. Xerox Corp.*, 497 F.2d 180, 181 (9th Cir. 1974)). It is "purely interlocutory" and "not among those interlocutory orders which are made appealable by statute." *Id.* (quoting *Kris Petroleum Ltd. v. Stoddard*, 221 F.2d 801, 802 (9th Cir. 1955) (per curiam)). The same is true of a "district court order granting permissive intervention but denying intervention as of right." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 372 (1987) (holding collateral-order doctrine inapplicable); *see also Prete v. Bradbury*, 438 F.3d 949, 959 n.14 (9th Cir. 2006). Such a decision is not "immediately appealable," *Stringfellow*, 480 U.S. at 372, and any appeal must be dismissed "for want of jurisdiction," *id.* at 380.

To support an immediate appeal in this context, an order denying intervention must reflect "a complete denial of the right to participate." *Stringfellow*, 480 U.S. at 378; *see Prete*, 438 F.3d at 959 n.14. That is a high bar: A complete denial occurs when the court "h[olds] that the proposed intervenors could not intervene as of right" and also "denie[s]" any alternative "request for permissive intervention," *Donnelly v. Glickman*, 159 F.3d 405, 408 (9th Cir. 1998), so that the proposed intervenor has no prospect of raising any "claims on postjudgment appeal," *Stringfellow*, 480 U.S. at 378.

**2.** The Court should dismiss this interlocutory appeal for lack of a "final" order.

As an initial matter, the district court "permitt[ed] intervention." *Alsea Valley*, 358 F.3d at 1187 (quotation marks omitted). Far from ordering "a complete denial of the right to participate," *Stringfellow*, 480 U.S. at 378, the district court allowed the Legislature "to present[] argument and evidence in opposition to the United States' motion for preliminary injunction," 1-ER-29; *see also, e.g.*, 1-ER-2–3.

Since then, the Legislature has participated on the merits at every turn. It opposed the United States's motion for preliminary injunction, presented oral argument, and, after the injunction issued, moved for reconsideration—a motion the district court "fully consider[ed]." 1-ER-11 ("As the Court did allow the Legislature to permissively intervene to oppose the United States' motion for preliminary injunction, the Court will fully consider the Legislature's motion for reconsideration."). And because the Legislature later appealed the injunction, No. 23-35450 (9th Cir.), it cannot assert an inability

to "obtain effective review of its claims on appeal" even at this early juncture, *Stringfellow*, 480 U.S. at 375.

The Legislature's persistent participation in the proceedings below also reveals the wisdom of dismissing interlocutory appeals like this one. Section 1291's finality requirement "protects a variety of interests that contribute to the efficiency of the legal system." *Stringfellow*, 480 U.S. at 380. "Pretrial appeals may cause disruption, delay, and expense for the litigants; they also burden appellate courts by requiring immediate consideration of issues that may become moot or irrelevant by the end of trial." *Id.* This appeal is case in point. By seeking interlocutory review of a non-dispositive, non-prejudicial, partial denial of intervention—in addition to pursuing a parallel merits appeal in which it duplicated the named defendant's arguments, *see supra* pp. 12-15—the Legislature has engaged in the very mischief that § 1291 forbids.

**B.** In invoking 28 U.S.C. § 1291, the Legislature overlooks the above principles. The only case it cites, *Donnelly*, 159 F.3d 405, also does not support this appeal. *Donnelly* stands for the unremarkable proposition that a complete denial of participation is immediately reviewable. *See id.* at 408-09 (finding jurisdiction where the district court had both (1) "held that the proposed intervenors could not intervene as of right in either the liability or remedial phase of plaintiffs' action" and (2) "also denied the request for permissive intervention"). That accords with the Supreme Court's holding that interlocutory review is unavailable when, as here, the district court separately granted permissive intervention. *Stringfellow*, 480 U.S. at 378.

22

The Legislature could not belatedly fix these jurisdictional flaws by pointing to certain conditions that the district court imposed when it permitted the Legislature to intervene. *Stringfellow* found appellate jurisdiction lacking despite far more significant strictures than those that ever affected the Legislature. In *Stringfellow*, the district court had barred the intervenor from raising any new "claim for relief," constrained which existing claims it could join, and prohibited it from "fil[ing] any motions or conduct[ing] its own discovery" without an original party's "permission." 480 U.S. at 373. Not even those conditions constituted "a complete denial of the right to participate" as would be required to support an immediate appeal. *Id.* at 378; *see also Churchill County v. Babbitt*, 150 F.3d 1072, 1082 (9th Cir. 1998) (finding no appellate jurisdiction over intervention order containing "the significant limitation that [the intervenor] could only participate in the remedial phase of the trial"), *amended on other grounds*, 158 F.3d 491 (9th Cir. 1998), *abrogated on other grounds*, *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).[6]

Nor has the Legislature advanced any alternative avenues for appellate jurisdiction (and such arguments would be forfeited anyway). *See Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1093 n.3 (9th Cir. 2007). *Stringfellow* forecloses any reliance

---

[6] Nor are the district court's conditions on the Legislature's permissive intervention unusual. Under Rule 24, even "[a]n intervention of right" may "be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment; *see United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002) ("[T]he Advisory Committee Notes provide a reliable source of insight into the meaning of a rule, especially when, as here, the rule was enacted precisely as the Advisory Committee proposed.").

on the collateral-order doctrine or on 28 U.S.C. § 1292(a)(1)'s grant of appellate juris-diction over injunctive orders. *See* 480 U.S. at 378-80. The Legislature likewise has not sought—and the district court has not issued—a certification under 28 U.S.C. § 1292(b). A writ of mandamus, moreover, is unavailable because the Legislature nei-ther requests such relief nor meets its "extraordinary" requirements. *See McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1142 (9th Cir. 2007) (requiring "clear and indis-putable" right to relief and "no other adequate means" to otherwise attain it (first quot-ing *Credit Suisse v. U.S. Dist. Court*, 130 F.3d 1342, 1345 (9th Cir. 1997); and then quoting *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654 (9th Cir. 1977))).

**C.**     Finally, the Legislature appears to rely on Federal Rule of Civil Procedure 59(e) to support a finding of appellate jurisdiction. *See* Br. 1, 33 n.8. But that rule does not aid the Legislature's effort to obtain interlocutory review because it has no bearing on the fundamental jurisdictional problem here: There is no final order because the district court *granted* intervention. *See Stringfellow*, 480 U.S. at 372, 378; 28 U.S.C. § 1291.

If anything, the Legislature's reliance on Rule 59(e) implicates a deferential standard of review. An order "denying [a] motion for reconsideration under FRCP 59(e)," Br. 33 n.8, *see* Br. 1, is reviewed for "abuse of discretion," *McQuillion v. Duncan*, 342 F.3d 1012, 1014 (9th Cir. 2003).[7]

---

[7] In a footnote, the Legislature argues that, under Rule 59(e), the August 2022 intervention order "merge[d]" with the February 2023 order and that therefore both orders are subject to appellate scrutiny. Br. 33 n.8 (quoting *Banister v. Davis*, 140 S. Ct.

*Continued on next page.*

**II.  The District Court Correctly Denied Intervention As Of Right.**

Even if there were appellate jurisdiction over this interlocutory appeal—and under any applicable standard of review—the Legislature's arguments would fail on the merits. The district court properly denied the Legislature's alternative motion for intervention as of right. The Legislature has not identified a significantly protectable interest and, regardless, its asserted interest fully overlaps with—and is adequately protected by—the State of Idaho.

Under Rule 24(a)(2), a "court must permit anyone to intervene who[] … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Rule 24 borrows its language from Rule 19, which addresses "[r]equired" joinder of absent parties. *See* Fed. R. Civ. P. 19(a) (providing that a "[r]equired [p]arty" is a person who "claims an interest relating to the subject of the

---

1698, 1703 (2020)). That is incorrect because the Legislature did not timely move under Rule 59(e). A motion to alter judgment "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). And to prolong the time to appeal the challenged order, the movant must seek Rule 59(e) relief within that same timeframe. Fed. R. App. 4(a)(4)(A); *Banister*, 140 S. Ct. at 1703. The Legislature, however, waited over 50 days before filing its "Rule 59(e)" motion and delayed almost seven months before appealing. *See supra* pp. 10-12, 15. Thus, under the Legislature's framing, there still is no appellate jurisdiction to disturb the August 2022 order. Nor does the Legislature ask this Court to treat its untimely Rule 59(e) motion as a Rule 60(b) motion, the denial of which would still be reviewed for abuse of discretion. *See, e.g.*, *Mitchell v. United States*, 958 F.3d 775, 784 (9th Cir. 2020).

action and is so situated that disposing of the action in the person's absence may[] …
as a practical matter impair or impede the person's ability to protect the interest" (emphasis omitted)). Accordingly, "an applicant is entitled to intervene in an action when
his position is comparable to that of a person [required to be joined] under Rule 19(a)[]
… unless his interest is already adequately represented in the action by existing parties."
Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment.

An applicant seeking to intervene as a matter of right must satisfy four requirements: "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022) (quoting *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011)). "In evaluating whether these requirements are met, courts 'are guided primarily by practical and equitable considerations.'" *Id.* (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)).

The applicant "has the burden to show that these four elements are met." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). "Failure to satisfy any one of the requirements is fatal" to the application. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

### A.    The Idaho Legislature lacks a significant protectable interest.

**1.**    The Legislature has not "establish[ed]" that it has "a significant protecta-ble interest" that is "protectable under some law" and has a relationship to "the claims at issue." *Citizens for Balanced Use*, 647 F.3d at 897; *see* Fed. R. Civ. P. 24(a)(2).[8]

The Legislature's asserted interest is not cognizable under Rule 24(a)(2). Because the federal government "sued the State"—by naming the State of Idaho as the defend-ant—this lawsuit "capture[s] all relevant state interests." *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191, 2203 (2022) (addressing protectable-interest prong). That includes the Legislature's asserted "interest in the validity of" Idaho law, Br. 5, which is no different from the State's interest. As a part of the State of Idaho, the Idaho Legislature is already a party. *See* Idaho Code § 67-1401(1) (assigning Attorney General to represent "the state and all departments, agencies, offices, officers, boards, commissions, institutions[,] and other state entities"). Perhaps for that reason, the

---

[8] The Legislature appears to assume that it has met the protectable-interest re-quirement. *See* Br. 14-15 (arguing that "[t]his appeal turns[] … on whether the Legisla-ture may be denied mandatory intervention solely because 'existing parties adequately represent' its interests"). But many of its arguments are relevant only to Rule 24(a)(2)'s protectable-interest prong. *Compare, e.g.*, Br. 16-49 (repeating that the Legislature is a "duly authorized state agent"), *with Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191, 2201-03 (2022) (considering "duly authorized" arguments under the protectable-interest inquiry). And although the district court focused on adequate rep-resentation, to avoid confusion the United States addresses the Legislature's assertions under the Supreme Court's prescribed framework. *Cf. Save Bull Trout v. Williams*, 51 F.4th 1101, 1107 (9th Cir. 2022) (stating "the court may affirm on any ground supported by the record" (quotation marks omitted)); 2-ER-69–71 (discussing United States's ar-guments contesting Legislature's asserted interest); 3-ER-296–298 (same).

Legislature's merits brief challenges the preliminary injunction by alleging "irreparable harm on the *State*." Leg. PI Br. 66 (emphasis added) (quotation marks omitted).

Thus, even if the Legislature purports "to represent interests of the State," it still lacks a protectable interest under for Rule 24(a)(2) purposes because all relevant state entities are "already parties and are already represented by the Attorney General." *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021) (concluding that district attorneys lacked protectable interest).

**2.**     Contrary to the Legislature's suggestions (*e.g.*, Br. 15-15, 25-26, 29-31, 37, 48-49, 55-56), Idaho's intervention statute does not change this conclusion.

**a.**     The Legislature maintains that Idaho Code § 67-465 confers on it a cognizable interest that the district court "refus[ed] to credit" or "disregarded," Br. 40-42, but that argument falters in every respect. To start, the Legislature acknowledges (at 12, 26, 30-31) that it amended the statute for strategic purposes *after* filing this interlocutory appeal—and that the district court had no occasion to consider the Legislature's new arguments.[9]

---

[9] The Legislature amended its statute mid-appeal to provide, among other things, that the Legislature "may" seek to intervene "as agents of the state of Idaho." H.R. 326, 67th Leg., 1st Reg. Sess. (Idaho 2023), https://perma.cc/C9JR-JNUF. As the United States explained in the prior proceedings, the earlier version of Idaho Code § 67-465 did not "expressly authorize" the Legislature to speak on the State's behalf, which was one of many independent reasons why that statute did not support intervention as of right. 2-ER-70–71; *see also* 3-ER-298.

Regardless, under the Legislature's theory, § 67-465 is irrelevant. By the Legislature's telling, the district court denied intervention as of right "solely" because the State adequately represents the Legislature's interest. Br. 15; *see also* Br. 27 ("The decisive question is whether the [State] adequately represents the Legislature's interest in defending section 622."). But as the Supreme Court made clear, a state intervention law would pertain at most to Rule 24(a)(2)'s protectable-interest prong—*not* the adequate-representation inquiry. *See supra* p. 27 n.8. *Compare Berger*, 142 S. Ct. at 2201-03 (discussing intervention statute as part of interest analysis), *with id.* at 2203-05 (separately analyzing adequate representation). The intervention statute has no effect on the conclusion that the Legislature claims to challenge.

Nor is there merit to the Legislature's insistence (Br. 12) that the Court consider "section 465 in its present form." Because the Legislature argues (Br. 1, 33 n.8) that the district court denied relief under Rule 59(e), the Legislature cannot rely on a change in law, which it admittedly brought about (1) after the district court had ruled and (2) to improve its appellate prospects. As this Court has explained, even in the "intervening-change-in-law" context, Rule 59 "do[es] not exist to overturn 'informed and presumptively strategic decisions on appeal.'" *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1119 (9th Cir. 2022) (quoting *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 374 (6th Cir. 2007)), *cert. denied*, 143 S. Ct. 1756 (2023).

Declining to review the Legislature's new argument is especially proper here. The Legislature requests only prospective relief (*i.e.*, it asks to participate in the district court

proceedings going forward), Br. 16, 59; it seeks to strategically shift the legal terrain mid-appeal without allowing the district court an opportunity to consider new arguments, *contra Wakefield*, 51 F.4th at 1119; and it invites interlocutory review of a partial *grant* of intervention.

    **b.**    The Legislature's new argument independently fails on its own terms. Idaho's intervention statute cannot override the Federal Rules of Civil Procedure or automatically grant intervention. Rather, "the right to intervene in a civil action pending in a United States District Court is governed by Rule 24 and not by state law." *Venegas v. Skaggs*, 867 F.2d 527, 530 n.2 (9th Cir. 1989) (quotation marks omitted), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990); *see Department of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (explaining that "state law cannot negate the requirement of the federal rule"). This is true even when the putative intervenor is a state legislature: A state statute still "cannot supplant the Federal Rules of Civil Procedure and make intervention automatic." *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019); *see also, e.g.*, *Berger*, 142 S. Ct. at 2203-05 (analyzing Rule 24's adequacy-of-representation prong despite state intervention statute).

    Even taken at face value, Idaho Code § 67-465 does not aid the Legislature. Missing from the amended law is any suggestion that the Legislature is a *necessary* party. The statute speaks solely in permissive terms. *Compare* Idaho Code § 67-465 (providing that "legislature *may* seek to intervene" as "a matter of right, *or permissively*" (emphases added)), *with Berger*, 142 S. Ct. at 2202 (relying on "necessary parties" language in N.C.

Gen Stat. § 120-32.6(b) (quotation marks omitted)). For at least these reasons, Idaho's new intervention provisions do not satisfy Rule 24(a)(2)'s joinder-based requirements. *See supra* pp. 25-26; Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment ("[A]n applicant is entitled to intervene in an action when his position is comparable to that of a person [required to be joined] under Rule 19(a)[] … unless his interest is already adequately represented in the action by existing parties."). It does not offend any "sovereign choice" by the State of Idaho, *contra* Br. 31-32, 40-41, 54-58, to apply those principles to Idaho's amended statute.

## B. The State of Idaho adequately represents the Idaho Legislature's alleged interest.

**1.** Whatever interest the Idaho Legislature may have, the State of Idaho (represented by Idaho's Attorney General) adequately represents it.

In evaluating adequate representation, this Court considers three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Callahan*, 42 F.4th at 1020 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). The "most important factor" in this inquiry "is how the [applicant's] interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086. When those interests are

31

"identical," this Court routinely declines to disturb the denial of intervention as of right. *See, e.g.*, *id.* at 1086-88; *Callahan*, 42 F.4th at 1021 & n.5.

The Legislature's claimed interests in this litigation are identical with the State's. As the Legislature puts it, they both seek to "defend[] the validity of state law." Br. 48. The proceedings thus far confirm that the Idaho Attorney General has adequately defended the Idaho Legislature's alleged interest: The State has mounted a "robust defense of the abortion ban," including by "vigorously opposing the United States' motion for preliminary injunction in its briefs and in oral argument," 1-ER-6, "seeking to reverse [the district court]'s ruling granting the injunction" by moving for reconsideration, 1-ER-6, and by appealing the injunction, No. 23-35440 (9th Cir.)—just like the Legislature did.

Along the way, the State and Legislature have repeated the same arguments. Each has (incorrectly) asserted, for example, that: the United States lacks a cause of action; the Spending Clause forecloses relief; the Tenth Amendment forecloses relief; EMTALA does not encompass pregnancy termination; Idaho's abortion law does not conflict with EMTALA; and the factual record does not show an actual conflict between federal and state law. *See supra* pp. 12-15.

Even after the preliminary injunction issued, the State and Legislature have continued to litigate side-by-side. Both sought reconsideration of the injunction rather than immediately appealing, 2-ER-102, 139, both asked the district court to delay ruling on those motions, SER-45, both filed supplemental briefs addressing the same intervening

state-court decision, *see* SER-15, 29, and both appealed the injunction, *see* Nos. 23-35440, 23-35450. And in that consolidated appeal, the State and Legislature's briefs similarly mimic each other, *see supra* pp. 14-15, prompting the State to "join[]" several "arguments made by the Idaho Legislature" to "avoid duplicative briefing," State PI Br. 32.

Faced with redundant arguments serving the same goal, the district court correctly concluded that, "both formally and functionally, this is the case where the interests of the existing party overlap fully with the interests of the proposed intervenor." 1-ER-9 (emphasis omitted). And although the State "may not defend [Idaho Code § 18-622] in the exact manner that the [Legislature] would," the Legislature cannot show that the State has "conceded any '*necessary* elements to the proceeding.'" *Perry*, 587 F.3d at 954 (quoting *Arakaki*, 324 F.3d at 1086).

**2.** Any supposed differences between the State and Legislature are "best characterized as a dispute over litigation strategy or tactics," which "are not enough to justify intervention as a matter of right." *Perry*, 587 F.3d at 954 (quoting *City of Los Angeles*, 288 F.3d at 402-03). "[W]hen a proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has rested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status." *Callahan*, 42 F.4th at 1021 (quoting *League of United Latin Am. Citizens v. Wilson* (*LULAC*), 131 F.3d 1297, 1306 (9th Cir. 1997)).

The Legislature tries (Br. 41) to manufacture a conflict by mentioning minor matters of timing and briefing logistics, but those assertions are immaterial. A "bare allegation that the litigation is progressing too slowly cannot overcome the uncontroverted fact that [defendants] are more than adequately representing [an intervenor]'s primary interest in seeing [a state law] upheld." *LULAC*, 131 F.3d at 1306 (denying intervention to defend a California law). In fact, the district court explained that none of the Legislature's examples affected the court's decision-making. *See* 1-ER-9–11.

The Legislature likewise does not advance its argument by citing (Br. 50-51) the Idaho Attorney General's "non-opposition" to the Legislature's intervention motion. In suggesting that the State's non-opposition shows inadequate representation, the Legislature misunderstands the Rule 24 inquiry: The question is not whether the State endorses the Legislature's procedural interest in intervening, but whether the State adequately represents the Legislature's asserted substantive interest in "the claims at issue." *Citizens for Balanced Use*, 647 F.3d at 897; *accord* Fed. R. Civ. P. 24(a)(2) (requiring an "interest relating to the property or transaction that is the subject of the action"). But even under the Legislature's mistaken premise, its argument does not follow. The Legislature identifies no case suggesting that a party's *lack* of opposition to intervention constitutes a conflict amounting to inadequate representation.

None of the Legislature's other suggested differences from the State supports intervention as of right. The Legislature criticizes (Br. 51-52) the State for not pressing forcefully enough an argument under the Spending Clause, but "a movant-intervenor['s]

34

interest in making an additional constitutional argument in defense of government action does not render the government's representation inadequate." *Victim Rights Law Ctr. v. Rosenfelt*, 988 F.3d 556, 562 (1st Cir. 2021), *cert. denied sub nom. Foundation for Individual Rights in Educ. v. Victim Rights Law Ctr.*, 142 S. Ct. 754 (2022).

Regardless, the State *did* raise the Spending Clause. 2-ER-255–256. And the State cannot be faulted for declining to stake untenable positions in support of that argument—particularly because the Legislature itself made dispositive admissions defeating any Spending Clause contention. The only time the Supreme Court has found coercion in a spending program was in the Medicaid context—which, unlike Medicare, involves funds provided directly to states—based on the Court's conclusion that states were forced to adopt new spending programs or lose federal funding (worth "over 10 percent of a State's overall budget") for their existing programs. *See National Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 580-85 (2012) (Roberts, C.J.) (plurality opinion). Here, however, the Legislature admitted that "[m]edical providers' participation in Medicare is voluntary." *Compare* 3-ER-350 (Complaint ¶ 15), *with* 3-ER-312 (Legislature's Answer admitting ¶ 15).

Equally unpersuasive is the Legislature's assertion (Br. 41-42) that the State should have relied more heavily on the "major questions doctrine." Here again the Legislature offers mere "disagreement over litigation strategy or legal tactics." *Callahan*, 42 F.4th at 1021 (quoting *LULAC*, 131 F.3d at 1306). And as explained, insofar as the Legislature insists that the major-questions doctrine sounds in constitutional law, *see* 2-

35

ER-153, the Legislature's preference for "an additional constitutional argument" does "not render the government's representation inadequate." *Victim Rights*, 988 F.3d at 562.[10]

3.      This case differs starkly from those in which this Court has found inadequate representation. In those instances, the named defendant sought an outcome that would have injured the intervenor. In *California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006), for example, this Court found intervention appropriate when the United States sought to defend a federal statute's constitutionality by positing a limiting construction that would have excluded the proposed intervenors from the statute's protections. *Id.* at 444. Similarly, in *Citizens for Balanced Use*, 647 F.3d 893, the Court determined that an environmental group could intervene to defend a regulatory order that the Forest Service was defending on the sole ground that it was compelled to do so by a court decision (a decision that the Service was separately appealing). *Id.* at 899.

Here, however, the Legislature's alleged disputes "boil down to strategy calls" about how to prioritize legal arguments. *Perry*, 587 F.3d at 954. Such disagreements do not amount to a divergence of interests cognizable under Rule 24(a). *E.g.*, *id.* (collecting cases).

---

[10] Not only are the Legislature's merits arguments irrelevant to the intervention inquiry here, but they are also unavailing for the reasons the United States provided in the district court proceedings and in the pending preliminary-injunction appeals. *See, e.g.*, Br. for U.S., *United States v. Idaho*, No. 23-35440 (9th Cir.), Dkt. No. 35.

Nor does this case resemble those on which the Legislature relies. In *California Department of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078 (9th Cir. 2022), there was no "dispute that the existing parties d[id] not represent the [intervenors'] interests." *Id.* at 1086. The defendant—a defunct company—was also "controlled by" the plaintiff-agency and thus was "not defending itself" against claims that the intervenor-insurers would have had to pay. *Id.* at 1085. And in *Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula*, 41 F.4th 767 (6th Cir. 2022), a dispute over local zoning ordinances, the Court of Appeals found intervention appropriate because the government-defendant had "readily conceded that it was limited in how much it could do to represent the interest of individual citizens." *Id.* at 775. There, the defendant alone faced "the possibility of monetary damages," which could have prompted it to settle on terms unfavorable to the intervenors. *Id.* at 774-75. Here, by contrast, the State of Idaho and the Idaho Legislature share the same interest: defending the same Idaho law. *See* Br. 48.

**4.** The Legislature's remaining arguments lack foundation in the record. The Legislature contends, for example, that the State does not adequately represent its interests because the State "delayed seeking reconsideration of the injunction." Br. 41. Yet the Legislature omits that it "join[ed]" the State's request to delay reconsideration. SER-45. The district court explicitly noted the point when it rejected this same argument. 1-ER-10.

The Legislature's other claim—that "[t]he district court did not cite *Arakaki*[, 324 F.3d 1078,] or any other legal standard when ruling that the [State] adequately

represents the Idaho Legislature," Br. 53—has an equally glaring flaw. The court expressly quoted *Arakaki* before applying it and other apposite authorities. *See, e.g.*, 1-ER-9 (quoting *Arakaki*, 324 F.3d at 1086); 1-ER-17–27 (measuring Legislature's arguments against Ninth Circuit precedents).

Also without merit is the Legislature's contention that the district court "disregarded the axiom that '[t]he burden on proposed intervenors in showing inadequate representation is *minimal*.'" Br. 54 (Legislature's emphasis) (quoting *Arakaki*, 324 F.3d at 1086). To the contrary, the court carefully considered the litigation history—including the Legislature and State's matching arguments—to conclude that, "even given the Legislature's minimal burden," the Legislature simply failed to meet it. 1-ER-24.

### C. The district court's decision is fully consistent with *Berger v. North Carolina State Conference of the NAACP.*

The district court faithfully applied *Berger*, 142 S. Ct. 2191.[11] That case does not support the Legislature's novel view that a district court must uncritically grant intervention whenever a state legislature demands it.

**1.a.** As the district court explained, *Berger*'s facts, reasoning, and holding are "readily distinguishable." 1-ER-26; *see* 1-ER-6–9.

---

[11] That the court of appeals exercised appellate jurisdiction in *Berger* does not support doing so here. *See supra* pp. 20-24. In *Berger*, unlike here, the district court had denied both intervention as of right and permissive intervention. *North Carolina State Conference of NAACP v. Cooper*, No. 1:18CV1034, 2019 WL 5840845, at *4 (M.D.N.C. Nov. 7, 2019); *North Carolina State Conference of NAACP v. Cooper*, 332 F.R.D. 161, 171-73 (M.D.N.C. 2019).

In *Berger*, the Supreme Court concluded that North Carolina's legislative leaders were entitled to intervene as of right to defend a state voter-identification law. 142 S. Ct. at 2205-06. The plaintiff in *Berger* brought a constitutional challenge naming as defendants certain North Carolina officials, including the governor and the State Board of Elections, under the *Ex Parte Young* doctrine. *See id.* at 2197. Those officials were represented by the North Carolina Attorney General, who (while serving as a state senator) had voted against an earlier version of the disputed law and had "filed a declaration in support of a legal challenge against it." *Id.* at 2198. And after the governor had been dismissed from the case, he filed an amicus brief arguing that the statute was unconstitutional. *Id.* at 2200. State legislators thus sought to intervene to provide a robust defense, which the remaining defendants and state attorney general were unwilling to provide. *Id.* at 2198-99.

In addressing whether the legislators satisfied Rule 24(a)(2), the Supreme Court separately considered (1) whether the proposed intervenors had a cognizable interest, *Berger*, 142 S. Ct. at 2201-03, and, if so, (2) whether the named defendants adequately represented that interest, *see id.* at 2203-05. On the first question, the Court held that the legislators had a protectable interest, emphasizing that North Carolina law deemed the prospective intervenors "'necessary parties' to suits like this one," *id.* at 2202 (quoting N.C. Gen. Stat. § 120-32.6(b)), and that the plaintiffs "ha[d] not sued the State" despite challenging a state statute, *id.* at 2203.

39

Turning to the second question, the Supreme Court rejected the lower courts' use of a "heightened presumption" that the named defendants "adequately represented the legislative leaders' interests." *Berger*, 142 S. Ct. at 2203-04 (quoting *North Carolina State Conference of NAACP v. Berger*, 999 F.3d 915, 933-34 (4th Cir. 2021)). Granting intervention was appropriate, the Supreme Court explained, because the intervenors (unlike the named defendants) were "not burdened by misgivings about the law's wisdom" and would "focus on defending the law vigorously on the merits." *Id.* at 2205. The Court also recognized that, absent intervention, the North Carolina legislature had no way to ensure that the challenged law was adequately defended in court. *See id.* In these respects, the Supreme Court followed its settled precedent in holding that the legislators could intervene. *See Karcher v. May*, 484 U.S. 72, 80 (1987) ("The Legislature was permitted to intervene because it was responsible for enacting the statute and because no other party defendant was willing to defend the statute." (quotation marks omitted)).

    **b.** *Berger* does not control this case. Unlike the plaintiff in *Berger*, the United States sued the State of Idaho itself—including all of the State's components and agencies. *Cf. Berger*, 142 S. Ct. at 2201-03. The federal government did not "select" a defendant "sympathetic to their cause or most inclined to settle favorably and quickly," and there is no "risk" of "a hobbled litigation rather than a full and fair adversarial testing of the State's interests and arguments." *Id.* at 2201.

40

Nor is this a case where a plaintiff has attempted to "pick its preferred defendants and potentially silence those whom the State deems essential to a fair understanding of its interests." *Berger*, 142 S. Ct. at 2203; *see id.* at 2201 (noting danger that the "State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law"). As a component of the State of Idaho, the Idaho Legislature is already a party. *Cf. id.* at 2203 (rejecting the argument that "the legislative leaders are already effectively 'existing' parties to this suit" because the plaintiff "has not sued the State"). And like the rest of Idaho's "departments, agencies, offices, officers, boards, commissions, institutions[,] and other state entities," the Idaho Legislature is represented by the Idaho Attorney General. Idaho Code § 67-1401(1). The State, its Governor, and its Attorney General have expressed strong support for Idaho's abortion law and have defended it throughout this litigation—in the same way (and with the same arguments) as the Legislature. *See* 1-ER-6, 14–16; *supra* pp. 12-15.

**2.**     The Legislature's theory misunderstands *Berger*, the district court's decision, and the federal rules.

**a.**     The Legislature misconstrues *Berger* as having created an inflexible rule automatically requiring intervention for all "duly authorized state agent[s]" pursuant to a state's "sovereign choice." *E.g.*, Br. 17, 57; *see also* Br. 13-14, 17-26, 33-44. The Supreme Court did nothing of the sort. It explained how the facts before it "illustrate[d] how divided state governments *sometimes* warrant participation by multiple state officials

41

in federal court." *Berger*, 142 S. Ct. at 2205 (emphasis added). The Court recognized—as the district court here did—that granting intervention may *not* be appropriate when "the interests of existing parties … come to overlap fully with the interests of any remaining proposed intervenor." *Id. Berger* did not suggest that courts must rubber-stamp every legislature's intervention statute and intervention motion, all at the risk of "mak[ing] trial management impossible" and inviting "a cascade of motions." *Id.* (quotation marks omitted).

The Legislature's interpretation is also irreconcilable with *Berger*'s mode of analysis. *Berger* makes clear that the Legislature's arguments about state agency and sovereign choice pertain to "the question whether the legislative leaders" have met Rule 24(a)(2)'s "interest" prong. *See* 142 S. Ct. 2201-03. They do not satisfy the Legislature's burden on the "remaining question" concerning "adequacy of representation." *Id.* at 2203. In answering that separate question, the Supreme Court "[s]et[] aside" a "presumption[]" of adequate representation and turned to "the proper resolution of [the] case" by canvassing "the facts." *Id.* at 2205. And even those facts showed—at most—that "sometimes" a court should permit "participation by multiple state officials." *Id.* That is why the Court dissected the defendants' disincentives and failures to muster a robust defense.[12] Under the Legislature's reductive reading, however, the Court had no reason to

---

[12] *See, e.g.*, *Berger*, 142 S. Ct. at 2205 (emphasizing how defendants "declined to offer expert-witness affidavits in support of" the challenged law "even though [the plaintiff] offered many and the legislative leaders sought to supplement the record with

*Continued on next page.*

do anything besides point to North Carolina's intervention statute, and no reason to consider Rule 24(a)(2)'s adequacy prong at all.

For those reasons, the Legislature's resort to its amended intervention law, Idaho Code § 67-465, is unavailing. And as explained above (pp. 28-31), that new law does not affect the district court's adequacy finding, *Berger*, 142 S. Ct. at 2203-05, it is not properly before this Court, *Wakefield*, 51 F.4th at 1119, it cannot "negate" Rule 24's requirements, *Lucent Techs.*, 642 F.3d at 741, and it differs from the intervention statute in *Berger* by speaking in permissive, not "necessary," terms, *contra* 142 S. Ct. at 2202 (quoting N.C. Gen. Stat. § 120-32.6(b)).

The Legislature likewise misapprehends the Supreme Court's reference (142 S. Ct. at 2205) to a legislature's ability to "give voice to a different perspective." Br. 21, 40. The Court was not announcing a categorical rule; it was describing precisely what the district court here understood: that intervention was appropriate under the facts of that case because the legislators' "different perspective" was to "defend[] the law vigorously on the merits." *Berger*, 142 S. Ct. at 2205. The Supreme Court thus contrasted the legislators' "perspective," *id.*, with the defendant-officials' concession that their "primary objective *wasn't* defending" the challenged law, *id.* at 2199 (emphasis in original) (quotation marks omitted). And given those unusual facts, the Court took care to avoid

---

their own"); *id.* (explaining that defendants were "appointed and potentially removable by a Governor who vetoed [the challenged law] and who filed his own briefs in this litigation calling the law 'unconstitutional' and arguing that it 'should never go into effect'").

suggesting that Rule 24(a)(2) demands intervention when the interests of a party and proposed intervenor "overlap fully." *Id.* at 2205.

**b.** Lacking support in *Berger*, the Legislature mischaracterizes the district court's decision as having relied on a "presumption" of adequate representation or on the dissenting opinion in *Berger. See, e.g.*, Br. 13-14, 32-39, 50, 58. The court did no such thing. It disclaimed any presumption because it understood *Berger* as holding that "a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." 1-ER-7 (quoting *Berger*, 142 S. Ct. at 2204).[13] The district court correctly observed, however, that *Berger* "did not say that a state agent should *always* be allowed to intervene in federal court when authorized by state law." 1-ER-7. And, citing *Berger*'s observation that intervention may not be appropriate when a party's and intervenor's interests "overlap fully," 142 S. Ct. at 2205, the district court followed the Supreme Court's lead. It inspected the record before concluding that, "both formally and functionally, this *is* the case where the interests of the existing party overlap fully with the interests of the proposed intervenor." 1-ER-9.

**c.** The Legislature's view also defies Rule 24's text and context. Under Rule 24(a)(1) and 28 U.S.C. § 2403, a "State" has a statutory right to intervene whenever "the

---

[13] If anything, the district court was overly generous to the Legislature. This Court has explained that a presumption of adequate representation can still arise if an existing party and proposed intervenor share "identical" interests. *Callahan*, 42 F.4th at 1021 n.5 ("This 'identity of interest' rule remains on firm legal footing after *Berger*."). The Court need not reach that issue, however, because the district court did not rely on any presumption.

constitutionality of any statute of that State … is drawn in question." 28 U.S.C. § 2403(b). But beyond that narrow circumstance, Rule 24 generally addresses a state's (or its authorized agent's) asserted interests in the interpretation or administration of state law through permissive intervention, subject to a court's "discretion." Fed. R. Civ. P. 24(b). Although a judicial decision interpreting Idaho law may implicate the State's "interest in the continued enforcement of [its] own statutes," Br. 48 (alterations omitted) (quoting *Cameron v. EMW Women's Surgical Ctr.*, 142 S. Ct. 1002, 1011 (2022)), Rule 24's language and structure confirm that such interests do not automatically entitle the Idaho legislators here to intervene as of right. *Accord Berger*, 142 S. Ct. at 2205.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this appeal or affirm.

Respectfully submitted,

*Of Counsel:*

SAMUEL BAGENSTOS
*General Counsel*

PAUL R. RODRÍGUEZ
*Deputy General Counsel*

DAVID HOSKINS
*Supervisory Litigation Attorney*

JESSICA BOWMAN
MELISSA HART
*Attorneys*

*U.S. Department of Health
and Human Services*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
General*

JOSHUA D. HURWIT
*United States Attorney*

MICHAEL S. RAAB
McKAYE L. NEUMEISTER

<u>s/ Nicholas S. Crown</u>

NICHOLAS S. CROWN
*Attorneys, Appellate Staff
Civil Division, Room 7325
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 305-1754
nicholas.s.crown@usdoj.gov*

September 2023

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellee states that it knows of two related cases pending in this Court: Nos. 23-35440 and 23-35450. This Court consolidated those appeals, which arise from the same preliminary injunction issued during the proceedings below.

*s/ Nicholas S. Crown*
Nicholas S. Crown

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-35153

I am the attorney or self-represented party.

**This brief contains** | 11,556 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | | .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Nicholas S. Crown | **Date** | 9/11/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**         *Rev. 12/01/22*

**ADDENDUM**

## TABLE OF CONTENTS

Federal Rule of Civil Procedure 19........................................................................A1

Federal Rule of Civil Procedure 24........................................................................A2

**Federal Rule of Civil Procedure 19**

**Rule 19. Required Joinder of Parties.**

(a) PERSONS REQUIRED TO BE JOINED IF FEASIBLE.

(1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(3) *Venue.* If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

(b) WHEN JOINDER IS NOT FEASIBLE. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

(c) PLEADING THE REASONS FOR NONJOINDER. When asserting a claim for relief, a party must state:

(1) the name, if known, of any person who is required to be joined if feasible but is not joined; and

(2) the reasons for not joining that person.

## Federal Rule of Civil Procedure 24

### Rule 24. Intervention

(a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) PERMISSIVE INTERVENTION.

(1) *In General.* On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

(2) *By a Government Officer or Agency.* On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

(A) a statute or executive order administered by the officer or agency; or

(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) NOTICE AND PLEADING REQUIRED. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

A2