No. 23-35153

# In the United States Court of Appeals for the Ninth Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*
v.
THE STATE OF IDAHO,
*Defendant-Appellant.*

Appeal from the United States District Court
for the District of Idaho
Honorable B. Lynn Winmill
(1:22-cv-00329-BLW)

## REPLY BRIEF OF INTERVENORS-APPELLANTS
## THE IDAHO LEGISLATURE

Daniel W. Bower
MORRIS BOWER & HAWS PLLC
1305 12th Ave. Rd.
Nampa, ID 83686
Telephone: (208) 345-3333
dbower@morrisbowerhaws.com

*Counsel for Intervenors-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..............................................................i

TABLE OF AUTHORITIES ......................................................iii

ARGUMENT ........................................................................ 1

I.   THIS COURT HAS JURISDICTION TO HEAR THE IDAHO
     LEGISLATURE'S APPEAL ....................................... 1

     A. The Legislature Has Properly Invoked This Court's
        Jurisdiction Under 28 U.S.C. § 1291 .................................... 1

     B. *Stringfellow* Does Not Preclude Jurisdiction ......................... 1

          1. *Stringfellow* bears little resemblance to this case ........ 2

          2. *Extending Stringfellow would be inconsistent with the
             Supreme Court's recent decision in Berger* ................. 8

     C. The Collateral Order Doctrine Offers an Independent Ground
        of Jurisdiction ......................................................... 12

     D. The United States' Remaining Contentions Regarding
        Jurisdiction Are Also Meritless ........................................ 15

II.  THE LEGISLATURE HAS A SIGNIFICANT PROTECTABLE
     INTEREST IN DEFENDING SECTION 622 ........................... 19

     A. The Legislature's Significantly Protectable Interest is
        Reflected in Idaho Law That Gives the Legislature the Right
        to Intervene ......................................................... 20

     B. The United States Continues to Adopt the Arguments
        Articulated in the *Berger* Dissent ...................................... 25

ii

C. The Legislature Satisfies the Minimal Standard Articulated in *Berger* ........................................................................... 27

D. The Idaho Legislature Satisfies Traditional Criteria .......... 29

CONCLUSION ................................................................................. 36

CERTIFICATE OF COMPLIANCE ................................................ 37

STATEMENT OF RELATED CASES ............................................ 38

ADDENDUM .................................................................................... 39

iii

# TABLE OF AUTHORITIES

## Cases

*Alsea Valley All. v. Dep't of Commerce,*
  358 F.3d 1181 (9th Cir. 2004) ............................................................ 12

*Arakaki v. Cayetano,*
  323 F.3d 1078 (9th Cir. 2003) ......................................... 28, 30, 31, 35

*Berger v. N.C. State Conference of the NAACP,*
  142 S. Ct. 2191 (2022) ................................................................ *passim*

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.,*
  54 F.4th 1078 (9th Cir. 2022) .............................................................. 1

*Callahan v. Brookdale Senior Living Cmtys, Inc.,*
  42 F.4th 1013 (9th Cir. 2022) ............................................................ 29

*Cameron v. EMW Women's Surgical Ctr.,*
  142 S. Ct. 1002 (2022) .................................................................. 29-30

*Churchill Cnty. v. Babbitt,*
  150 F.3d 1072 (9th Cir. 1998) ........................................................... 12

*Cooper v. Newsom,*
  13 F.4th 857 (9th Cir. 2021) .............................................................. 23

*Coopers & Lybrand v. Livesay,*
  437 U.S. 463 (1978) .............................................................. 3, 13, 15

*Cotter v. Mass. Ass'n of Minority L. Enf't Officers,*
  219 F.3d 31 (1st Cir. 2000) ............................................................... 32

*CPC Patent Techs. Pty Ltd. v. Apple, Inc.,*
  34 F.4th 801 (9th Cir. 2022) ............................................................... 7

iv

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir. 1998) .................................................. 1, 15, 16

*Found. for Individual Rts. in Educ. v. Victim Rts. Law Ctr.,*
    142 S. Ct. 754 (2022) ............................................................ 32

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ........................................................... 21-22

*Kalbers v. U.S. Dep't of Justice,*
    22 F.4th 816 (9th Cir. 2021) ................................................. 1

*Oakland Bulk & Oversized Terminal, LLC v. Oakland,*
    960 F.3d 603 (9th Cir. 2020) ................................................. 7

*Prete v. Bradbury,*
    438 F.3d 949 (9th Cir. 2006) ........................................... 12, 15

*Quinn v. Robinson,*
    783 F.2d 776 (9th Cir. 1986) ........................................... 5, 14

*Singleton v. Wulff,*
    428 U.S. 106 (1976) .......................................................... 5, 14

*Stringfellow v. Concerned Neighbors in Action,*
    480 U.S. 370 (1987) .................................................... *passim*

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) ...................................... 27, 29, 30

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972) .......................................................... 28

*Victim Rts. L. Ctr. v. Rosenfelt,*
    988 F.3d 556 (1st Cir. 2021) ........................................... 32, 33

## Constitutional Provisions

U.S. CONST. art. I § 8 ............................................................... 6, 33

## Statutes and Rules

28 U.S.C. § 1291 ..................................1, 2, 3, 5, 7, 11, 16, 17, 18

42 U.S.C. § 1395dd (EMTALA) ............................................... 13

IDAHO CODE § 18-622 ................................................... 4, 19, 27

IDAHO CODE § 67-465 ................................................. 19, 21, 22

IDAHO CODE § 67-465(1) ................................................... 19

IDAHO CODE § 67-1401(1) ............................................. 21, 22

FRCP 24(a) ..................................................................... 25

FRCP 24(a)(1) ................................................................ 17

FRCP 24(a)(2) ........................................... 19, 23, 26, 27, 29

FRCP 59(e) ..................................................................... 18

## Other Authorities

BLACK'S LAW DICTIONARY (4th ed. 1968) ................................. 20

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE (3d ed. 1998) ...................................................... 28

JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES (Melville M. Bigelow ed., 5th ed. 1891) ...................................... 20

# ARGUMENT

## I. THIS COURT HAS JURISDICTION TO HEAR THE IDAHO LEGISLATURE'S APPEAL.

### A. The Legislature Has Properly Invoked This Court's Jurisdiction Under 28 U.S.C. § 1291.

This Court has jurisdiction. It is black-letter law that denial of a motion to intervene as of right is a final order and appealable under 28 U.S.C. § 1291 ("section 1291"). *See, e.g.*, *Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816, 822 (9th Cir. 2021); *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). The Legislature cited section 1291 as the basis for jurisdiction. *See* Op'g Br. at 1. The notice of appeal identified the district court's order denying the Legislature's renewed motion for intervention as of right. 3-ER-363. That motion was timely since the district court had invited it in its earlier order denying intervention as of right. *See* 1-ER-13. And the Legislature's initial motion for intervention was also timely filed on August 8, 2022, six days after the complaint. 3-ER-380.

### B. *Stringfellow* Does Not Preclude Jurisdiction.

The United States cites *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 372 (1987) and says that case should lead the Court

to "dismiss this interlocutory appeal for lack of a 'final order.'" Resp. at 20, 21. In *Stringfellow*, the Supreme Court held that that "a district court order granting permissive intervention but denying intervention as of right" is not a "final order" under section 1291. 480 U.S. at 1182. By the government's reckoning, *Stringfellow* means the district court's orders denying the Legislature's motions to intervene are not "immediately appealable" and "any appeal must be dismissed for want of jurisdiction." Resp. at 20 (quotations omitted). This Court should resist the invitation to extend *Stringfellow* to the facts here.

> 1.    *Stringfellow bears little resemblance to this case.*

*Stringfellow* does not apply here because its facts contrast sharply with this case. In *Stringfellow*, a nonprofit citizen group sought intervention in a lawsuit against a toxic waste site near the citizens' homes. 480 U.S. at 372. The district court denied intervention as of right but granted permissive intervention with three conditions: (i) no claims for relief not already raised; (ii) no participation in the claim for the government's clean-up costs; and (iii) secure permission before filing motions or conducting discovery. *Id.* at 373.

The citizen group appealed to the Supreme Court, which concluded there was no "final order" for purposes of section 1291 because the district court had denied intervention as of right but granted permissive intervention. *Id.* at 374. The Court added that the citizen group could not rely on the "collateral order" doctrine as an alternate ground of jurisdiction because the district court's orders were not "effectively unreviewable on appeal." *Id.* at 375 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)). The availability of a post-merits appeal meant the judge's orders denying intervention were not final, and thus not immediately appealable, both under section 1291 and the collateral order doctrine.

But *Stringfellow* should not be extended beyond its facts, which are wholly distinguishable from the facts here. The restrictions imposed on the Legislature's permissive intervention are much harsher than those imposed in *Stringfellow*. So harsh are they, in fact, that the restrictions effectively render the district court's denials of intervention as of right a "final order" which merits review under section 1291.

In *Stringfellow*, the district court said the private citizen group: (i) could not assert a claim of relief not already requested; (ii) could not intervene in the claim for the government's clean-up costs; and (iii) could

not file motions or conduct discovery without consent of the original parties. *Id.* at 373. Thus, the district court in *Stringfellow* listed three ways the intervenors *could not* participate. All other forms of participation were open to the intervenor. But in this case, the district court ruled the Legislature's permissive involvement "will be limited to presenting evidence and arguments the Legislature has said will show the holes in the factual foundation of the United States' motion … the Legislature will be allowed to participate in the preliminary-injunction proceedings only— and in that limited fashion." 1-ER-13–14 (cleaned up). Where the intervenor in *Stringfellow* was free to participate in litigation, except for three modest conditions, the district court prescribed only a single way that the Idaho Legislature would be allowed to participate—and that way precludes any presentation of legal arguments in defense of Idaho Code § 18-622 ("section 622"). *Compare* 480 U.S. at 373 *with* 1-ER-13 (cleaned up).

This fundamental difference in the character of the restrictions on permissive intervention means that *Stringfellow* does not apply. That difference radically alters the assumptions in *Stringfellow*, both under section 1291 and the collateral order doctrine.

5

First, the citizen group in *Stringfellow* argued that "onerous limitations on [the] right to participate" as a permissive intervenor "should be construed as a *complete* denial of the right to intervene" and thus eligible for appeal under section 1291. 480 U.S. at 377. The Court rejected this notion in *Stringfellow* because the intervenor had "alternative means for challenging the order" via a post-judgement appeal and because "none of the limitations interfere with [intervenors'] ability to raise its claims on postjudgment appeal." *Id.* at 378.

Not so in this case. The district court's conditions on permissive intervention allow the Legislature to make only factual arguments and only at the preliminary injunction stage. 1-ER-2, 1-ER-13.[1] Like any other litigant, the Legislature cannot appeal legal issues it did not raise at the district court. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("a federal appellate court does not consider an issue not passed upon below"); *Quinn v. Robinson*, 783 F.2d 776, 814 (9th Cir. 1986) (same). Unlike the citizen group in *Stringfellow*, the conditions on the Legislature here preclude it from raising and preserving legal arguments at all.

---

[1] The Legislature subsequently filed a "Motion for Leave to File Legal Arguments." 2-ER-224. The district court denied that motion. 3-ER-386.

6

It thus has no "alternative means" besides immediate appeal to preserve its interests. 480 U.S. at 378. The Legislature cannot appeal arguments if it is never allowed to make them.

Nor can the Legislature preserve its arguments by cooperating with Idaho's Office of the Attorney General (OAG). Bound by the district court's denial of intervention, the Legislature already tried to deliver substantial legal arguments to the district court through the OAG. 2-ER-90. But the OAG "refused to incorporate the memo's arguments into the State's memorandum opposing the preliminary injunction." 2-ER-90. The OAG did incorporate the Legislature's Spending Clause argument, but it was buried in a footnote and the district court labeled it "insufficiently developed." 2-ER-91.

The United States may object that the district court "effectively lifted its earlier prohibition on the Legislature's presentation of legal arguments," Op'g Br. at 44 n.9, by announcing that it would "fully consider the Legislature's motion for reconsideration." 1-ER-11. But the Opening Brief describes the flaw in that argument. "Because permissive intervention can be modified at the district court's discretion, the Legislature as

a permissive intervenor can look forward to participating in this historically significant lawsuit only insofar as the district court approves." Op'g Br. at 58. Without intervention as of right, the Legislature—Idaho's designated representative—may be prevented from raising a full defense of Idaho law, given the district court's "wide latitude … in dictating the terms of permissive intervention." *Oakland Bulk & Oversized Terminal, LLC v. Oakland*, 960 F.3d 603, 620 (9th Cir. 2020).

If the district court simply reinstates its directive limiting the Legislature to factual arguments at the preliminary injunction stage, the Legislature will be put "effectively out of court," *CPC Patent Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 805 (9th Cir. 2022) (cleaned up). Not only will the Legislature be unable to participate in the merits portion of the trial, but it will be barred from preserving any further legal arguments for post-judgment appeal since it cannot raise those arguments in the first place. Unlike *Stringfellow*, the district court's limits on intervention here are so severe as to render it a "final decision" for purposes of section 1291. This alone renders the case distinguishable and *Stringfellow* does not apply.

>    2.    *Extending* <u>*Stringfellow*</u> *would be inconsistent with the Supreme Court's recent decision in* <u>*Berger*</u>.

*Stringfellow* also should not be extended to apply to a Legislature acting as representative of a sovereign State. The intervenors in *Stringfellow* were a private citizen group. The intervenor here is the Legislature acting under a grant of authority from the sovereign State of Idaho. As *Berger v. N.C. State Conference of the NAACP*, 142 S. Ct. 2191 (2022) teaches, a sovereign Legislature is wholly unlike private citizens in the way that its intervention claim is handled on appeal. The Idaho Legislature may be distinguished from the private citizen group in *Stringfellow* on this basis as well.

In *Berger*, the Supreme Court held that "a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to defend a state law." *Id.* at 2204. *Berger* added that "[a]ny presumption against intervention is *especially* inappropriate when wielded to displace a State's prerogative to select which agents may defend its laws and protect its interests." *Id.* at 2204–05 (emphasis added). Far from endorsing barriers to intervention, *Berger* teaches that "[n]ormally, a State's chosen representatives should be greeted in federal

court with respect, not adverse presumptions." *Id.* at 2205. In *Berger*, the lower court neglected these principles in two respects: "first by failing to afford due respect to North Carolina's law designating the legislative leaders as its agents in litigation of this sort, and then by 'setting the [intervention] bar … too high.'" *Id.* at 2206 n.* (quoting 999 F.3d at 945) (Quattlebaum, J., dissenting)). Reversal followed, with a holding that "North Carolina's legislative leaders are entitled to intervene in this litigation." *Id.* at 2206.

Extending *Stringfellow* past private citizen groups to agents of a sovereign State would be incompatible with *Berger*'s open-arms approach to duly authorized state agents like the Idaho Legislature. A few inconsistencies are especially striking.

First, *Berger* stressed that "a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions." *Id.* at 2205. Interposing *Stringfellow* as a jurisdictional bar effectively imposes a "presumption against intervention," which *Berger* considered "*especially* inappropriate" when, as here, the result "displace[s] a State's prerogative to select which agents may defend its laws and protect its interests." *Id.* at 2204–05 (emphasis in original).

Second, *Berger* teaches that "federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." *Id.* at 2201. Yet *Stringfellow* openly admits to such practical impairments and impediments. *Stringfellow* says that the efficacy of a post-judgement appeal is "academic at best" for intervenors who must wait until merits are decided before appealing their denial of intervention. 480 U.S. at 376–77. This "academic at best" chance at participation "displace[s] a State's prerogative" to appoint the Legislature to defend its laws. *Berger*, 142 S. Ct. at 2204. That result is irreconcilable with *Berger*'s holding and rationale.

Third, extending *Stringfellow*'s jurisdictional bar to the facts here would allow the Legislature to participate only once the merits are "effectively unreviewable on appeal from a final judgement." 480 U.S. at 375. On the facts before it, *Stringfellow* said it could not discern a "compelling reason" for permitting an immediate appeal from the denial of intervention. Such a reason is amply supplied by *Berger*'s full-throated affirmation of a State's "prerogative to select which agents may defend its laws and protect its interests." 142 S. Ct. at 2204–05. A limited post-

merits appeal hardly satisfies *Berger*'s guarantee of robust representation for a State to "select which agents may defend its laws." *Id.* at 2204.

Fourth, uncritically applying *Stringfellow* to a State's duly authorized representatives would create a perverse incentive for district courts to shirk the "burden" of following *Berger*, 142 S. Ct. at 2211 (Sotomayor, J., dissenting). Extending *Stringfellow* to this case would allow district courts to avoid the burdens of granting intervention of right by granting permissive intervention with heavy-handed constraints. Under *Stringfellow*, that approach would essentially exclude a sovereign State's duly appointed agent for the duration of the district court proceedings. That approach denies the State's choice of advocates, contrary to *Berger*.

Fifth, *Stringfellow* elevates the "efficiency of the legal system" above the interests of would-be intervenors—even when they are a State's duly authorized representatives. 480 U.S. at 380. In fact, the United States relies on this language to accuse the Legislature of "the very mischief that section 1291 forbids." Resp. at 20. But there is no mischief here. *Berger* clearly stated that judicial administrative burdens cannot outweigh the importance of a State's sovereign choice of its own representative. *See* 142 S. Ct. at 2206.

For all these reasons, this Court should not take the initiative to extend *Stringfellow* to apply to agents appointed by a sovereign State. *Berger* counsels instead, that "a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions"—including the presumption that permissive intervention precludes an immediate appeal to challenge the denial of intervention as of right. 142 S. Ct. at 2205. *A fortiori*, the same logic applies to the Ninth Circuit cases cited by the United States since they rely on *Stringfellow*. *See, e.g.*, *Prete v. Bradbury*, 438 F.3d 949, 959 n.14 (9th Cir. 2006) (citing *Stringfellow*); *Churchill Cnty. v. Babbitt*, 150 F.3d 1072, 1081 (9th Cir. 1998) (same).[2]

## C. The Collateral Order Doctrine Offers an Independent Ground of Jurisdiction.

Even if this Court extended *Stringfellow* to the agent of a sovereign State, the collateral order doctrine offers an alternative ground for jurisdiction. That doctrine applies when the appealed order (i) "conclusively determine[d] the disputed question"; (ii) "resolve[d] an important issue

---

[2] *Alsea Valley All. v. Dep't of Commerce*, 358 F.3d 1181 (9th Cir. 2004) does not cite *Stringfellow* but relies on the same logic. All that has been said about *Berger* means that *Alsea Valley* should be likewise set aside as inapplicable.

completely separate from the merits of the action"; and is (iii) "effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand*, 437 U.S. at 468 (footnote omitted). The district court's order denying the Legislature's renewed motion for intervention as of right satisfies these criteria.

The first two requirements are undisputed. *See* Resp. at 21, 23–24. The district court (i) "conclusively determined" the Legislature's intervention as of right by denying it twice: First in the August 13 order and then again in the February 3 order. *See* 1-ER-2; 1-ER-32.

Nor is there any quibble that the district court's orders pertain to an "important issue completely separate from the merits of the action." *Coopers & Lybrand*, 437 U.S. at 468. *See also* Resp. at 21, 23–24. The merits are whether EMTALA may be read as an abortion mandate, which is "completely separate" from the Legislature's entitlement to intervene as of right.

Only the third requirement is disputed: whether the district court's order would "be effectively unreviewable on appeal from a final judgement." *Coopers & Lybrand*, 437 U.S. at 468. *Stringfellow* reasoned that

14

denying intervention as of right to a private citizens group was not "effectively unreviewable" because the group could seek a post-judgment appeal. 480 U.S. at 376. But here, the district court's order denying intervention would be "effectively unreviewable."

Unless the Legislature can intervene as of right, it faces a district court which has already imposed limitations that would preclude any legal arguments at the merits stage. *See* 1-ER-13 ("the Legislature will be allowed to participate in the preliminary-injunction proceedings only.").

Admittedly, the Legislature has taken advantage of the intervention appeal to make comments on the preliminary injunction. *See* 1-ER-11. But this does not fix the fundamental problem going forward to the merits portion of the case. The district court has essentially excluded a sovereign State's chosen representative from fully participating in defending that State's law. *See* 1-ER-13 ("the Legislature will be allowed to participate in the preliminary-injunction proceedings only."). Under the district court's stated conditions—or under similar conditions yet to be imposed—the Legislature would be unable to raise new legal arguments or preserve them for an appeal after the merits. *See Singleton*, 428 U.S. at 120; *Quinn*, 783 F.2d at 814. As a practical matter, the district court's

denial of intervention of right fits snugly within the collateral order doctrine as a lower court decision that is, without immediate appeal, "effectively unreviewable." *Coopers & Lybrand*, 437 U.S. at 468.

## D. The United States' Remaining Contentions Regarding Jurisdiction Are Also Meritless.

Other objections to this Court's jurisdiction are without merit.

1. *Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006) is no independent bar to jurisdiction. *Prete* concluded that the district court erred by granting intervention as of right to the chief petitioner and major supporter of a statewide ballot initiative. *Id.* at 959. *Prete* acknowledged that an appeal from a district court's grant of intervention is unlike an appeal from the denial of intervention. *See id.* In a footnote the Response cites, *Prete* explains "this disparity" as a function of the rules permitting the immediate appealability of a denial of intervention but denying immediate appealability of a grant of intervention. *See id.* 959 at n.14. Since this appeal challenges the denial of intervention as of right, it falls on the "immediately appealable" side of that line.

2. Nor does the government get any mileage out of *Donnelly*, 159 F.3d at 405. It affirmed the denial of intervention of right when the applicants failed to show a protectable interest in the suit. *See id.* at 409–10. *Donnelly* nowhere says that an order denying intervention is immediately appealable only by demonstrating that the district court order resulted in a "complete denial" of participation in the lawsuit. Resp. at 21. In fact, *Donnelly*'s only discussion of jurisdiction confirmed established principles that (1) a district court's denial of intervention as of right is immediately appealable, 159 F.3d at 409; and (2) appellate jurisdiction over the denial of permissive intervention depends on whether the district court abused its discretion, *id.* at 411. *Stringfellow* adds nothing: the phrase "complete denial" appears only in recounting the movant's argument, not in expressing the Court's holding or rationale. 480 U.S. at 377. The government concocts an imaginary procedural bar by piecing together phrases from *Donnelly* with unrelated language from *Stringfellow*. The supposed "high bar" is a fiction. Resp. at 21.

3. The United States invokes the Legislature's "persistent participation in the proceedings below" as reason to dismiss the appeal. *Id.* at 22. By the government's account, the Legislature "has engaged in the

very mischief that § 1291 forbids" by pursuing relief from the district court's denial of intervention as of right. *Id.* at 22. Nonsense. The United States cannot term the Legislature's involvement as "mischief" when the Supreme Court has already deemed it "well within the bounds of everyday case management." *Berger*, 142 S. Ct. at 2206.

Further, the fact that the Legislature and State's opening briefs cover some of the same ground is no reason to dismiss for lack of jurisdiction. *See* Resp. at 22. The Response confuses jurisdiction over an immediate appeal with the standard for intervening as of right under Federal Rule of Civil Procedure (FRCP) 24(a)(1). Section 1291 clearly confers jurisdiction over an appeal from the denial of intervention as of right, and FRCP 24(a)(1) authorizes intervention as of right (assuming other elements in place) when the intervenor is not "adequately represented" by existing parties. Section 1291 does not require proof that the intervenor will raise only non-duplicative arguments. That is especially so when a state legislature seeks to intervene in defense of state law challenged in federal court. Even if perfect non-duplicativeness were a significant value, a superficial comparison of the opening briefs submitted by the Legislature and the State demonstrates that the Legislature has raised

and pressed arguments that would otherwise go missing. *See infra* at 33–35 (discussing how the OAG has steadfastly refused to raise the Legislature's legal arguments in the OAG's own filings).

4. It is strange for the United States to discuss a writ of mandamus, which the Legislature has never requested. Although the Legislature reserves the right to file such a writ if appropriate, the government wastes ammunition targeting this as-of-yet unexercised procedural mechanism.

5. Rule 59(e) supports appellate jurisdiction as well. The district court invited the Legislature to submit a renewed motion to intervene as of right, and the court did not object that the Legislature's renewed motion was anything but timely. The fixed deadlines of Rule 59(e) do not apply when a court exercises its discretion to allow a renewed motion at a later time. Incidentally, the government's discussion of a deferential standard of review is a red herring. An order denying intervention as of right is reviewed de novo for legal correctness.

In conclusion, this Court has jurisdiction over the Legislature's appeal. *Stringfellow* should not be extended to thwart *Berger*'s strong presumption of full participation by state actors designated under state law. The district court's conditions in this case are so severe as to render

the district court's orders as "final" either under section 1291 or the collateral order doctrine. And none of the other complaints raised by the United States pose a bar to jurisdiction. This Court should exercise jurisdiction and decide the Legislature's entitlement to intervene as of right on the merits.

## II. THE LEGISLATURE HAS A SIGNIFICANT PROTECTABLE INTEREST IN DEFENDING SECTION 622.

The Legislature maintains that *Berger*, 142 S. Ct. at 2191, controls the application of FRCP 24(a)(2). *Berger* confirms the Legislature's significantly protectable interest in defending section 622. Idaho law expressly authorizes the Legislature to intervene when a lawsuit "challenges … the constitutionality of an Idaho statute … or otherwise challenges the construction or validity of an Idaho statute." *See* IDAHO CODE § 67-465(1). Thus, where section 622 is challenged by the United States, the very event contemplated by Idaho's intervention legislation, the Legislature has a legally protectable interest. Equally important, Idaho Code § 67-465 is an explicit directive from the Legislature and a fundamental statement of sovereignty by the State that the defense of section 622 will not be limited to the OAG. Idaho's intervention statute

is a plain delegation of authority to the Legislature to act as the State's representative in litigation.

That unquestionable authority rebuts the United States' argument that Idaho's Legislature can be relegated to a non-participant by simply naming the "State of Idaho" as defendant. This argument is facially invalid and flouts principles of statutory interpretation. Here, the United States effectively brushes aside Idaho's fundamental right to govern itself. How Idaho decides to defend its laws is a basic tenet of sovereignty. *See Sovereignty*, BLACK'S LAW DICTIONARY (4th ed. 1968) (citing JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 207, at 149 (Melville M. Bigelow ed., 5th ed. 1891)). The fact that this is even being questioned is troubling.

## A. The Legislature's Significantly Protectable Interest is Reflected in Idaho Law That Gives the Legislature the Right to Intervene.

Defying common sense, the United States argues that the Legislature has not identified a "significantly protectable interest and, regardless, its asserted interest fully overlaps with—and is adequately protected by—the State of Idaho." Resp. at 25. But the government fails to appreciate the obvious—that an intervention statute is an affirmative

expression of a significant state "interest" in how state laws are defended. *See Berger*, 142 S. Ct. at 2209 (Sotomayor, J., dissenting) ("state law can create a protectable interest in the resolution of a federal lawsuit."). Stated differently, the Legislature, through Idaho Code § 67-465, stated both a significantly protectable interest in the defense of Idaho legislation and that defense of Idaho legislation is not adequately protected simply by the OAG. To conclude otherwise ignores the expressed intent of Idaho's elected representatives.

*Berger* holds that "federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." 142 S. Ct. at 2201. Yet, illogically, the United States says the Legislature cannot have a "significantly protectable interest" simply because the "State of Idaho" was sued and because Idaho Code § 67-1401(1) assigns the OAG to represent the "state." *See* Resp. at 25, 27. That ignores statutory authorization that Idaho adopted, reserving for the Legislature a right to participate in litigation. *See* IDAHO CODE § 67-465. Indeed, the United States' interpretation would render section 67-465 essentially ineffective. *See Heckler v. Chaney*, 470 U.S.

821, 829 (1985) ("[The Court is] mindful … of the common-sense principle of statutory construction that sections of a statute generally should be read to give effect … to every clause.") (internal citation omitted).

Idaho in its sovereign role has adopted valid legislation appointing both the OAG and the Legislature to defend state legislation. Idaho law provides that the OAG has the legal authority to defend state law in any court whatsoever. *See* IDAHO CODE § 67-1401(1). However, Idaho law also authorizes the Legislature to defend state law against litigation. *See* IDAHO CODE § 67-465. The United States points to no law preventing the State of Idaho from making that sovereign choice. *Berger* is an expression of that deference and respect for state sovereignty.

As explained in the Legislature's opening brief, section 67-465 is significant because *Berger* stands for the proposition that when states express through legislative processes a desire to be involved in litigation, regardless of the involvement of the state attorney general, a presumption of adequate representation of the legislature's *interests* is improper. *See Berger*, 142 S. Ct. at 2204–05 ("Any presumption against intervention is *especially* inappropriate when wielded to displace a State's prerogative to select which agents may defend its laws and protect its *interests*.")

(first emphasis in original, second emphasis added). The United States ignores *Berger*'s proposition that a state legislature, by virtue of an intervention statute, expresses not only a presumption of adequate representation, but *also* an interest in the legislation it seeks to defend. An intervention statute is a plain directive on how a State wants to protect "*its interests*" and who will represent it in protecting those interests. *Id.* at 2205.

Indeed, the Court clearly said "a State's chosen representatives," in this case, the Legislature, "should be greeted in federal court with respect, not adverse presumptions."[3] *Id.* The reason is simple. The Legislature has an expressed interest in defending its law—an interest that deserves respect. Neither the United States nor the district court acknowledge that interest. Nothing could be more contrary to *Berger*.

In response, the government essentially asks the Court to ignore *Berger*. Citing FRCP 24(a)(2) and this Circuit's pre-*Berger* precedent, the

---

[3] Compare with *Cooper v. Newsom*, 13 F.4th 857, 866 (9th Cir. 2021) cited by the United States opposition. In *Cooper*, this Court said the would-be intervenors could "point to no legislative authorization granting them the authority to represent the State's interest in this case." *Id*. Here, the authorization is present. *Cooper* is simply irrelevant.

government insists that where the Legislature and State of Idaho (through the OAG) "both seek to 'defend[] the validity of state law'" there can no intervention as of right merely because those interests are allegedly the same. *See* Resp. at 32. This position tries to relitigate *Berger* by disregarding its presumption for intervention by duly authorized state authorities. This ignores the important federalism principles *Berger* promotes. *See Berger*, 142 S. Ct. at 2204 ("For a federal court to presume a full overlap of interests when state law more nearly presumes the opposite would make little sense and do much violence to our system of cooperative federalism."). Here, the very existence of an Idaho statute authorizing the Legislature's intervention presumes that intervention is appropriate. *See id*. Accordingly, the United States' assertion that Idaho legislation dictating "when" the Legislature can intervene is irrelevant directly contradicts *Berger*.

Essentially, the United States' arguments against intervention rely on the hard-to-swallow proposition that *Berger* is not controlling. If *Berger* controls—and it does—there is no basis for questioning that the Legislature has a significant protectable interest or whether the OAG "adequately represents" that interest.

From that perspective, the United States' hostility towards *Berger* is understandable. That hostility is reflected in two ways. First, the United States makes arguments regarding FRCP 24(a) based on criticisms asserted by Justice Sotomayor in her dissent. Just as those arguments were rejected by *Berger*'s majority, they should be rejected now. Second, the United States asserts that *Berger* is distinguishable on its facts. Not so. As set out in the opening brief, *Berger* is on point and controls federal courts when they consider the impact of a state intervention statute. No other authority cited by the United States is as applicable.

## B. The United States Continues to Adopt the Arguments Articulated in the *Berger* Dissent.

The United States' arguments on "adequate representation" mirror Justice Sotomayor's dissent in *Berger*. In that dissent, Justice Sotomayor criticized the majority for allowing intervention "even where the interests that the intervenors seek to represent are identical to those of the existing party." *Berger*, 142 S. Ct. at 2206 (Sotomayor, J., dissenting). Here, the United States treats *Berger* as if Justice Sotomayor's dissent was the majority opinion. It is not. Rather, Justice Sotomayor and the United

States' primary argument is countered by the majority's central holding: "[A] presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Id.* at 2204. Because the Legislature has been so authorized by Idaho law, its intervention should be welcomed—not obstructed.

The United States also insists that "Idaho's intervention statute cannot override the Federal Rules of Civil Procedure" and that state law cannot override Rule 24. *See* Resp. at 30. Again, Justice Sotomayor made precisely the same criticism. *Berger*, 142 S. Ct. at 2214 (Sotomayor, J., dissenting). But the question in *Berger* is whether Rule 24(a)(2)'s requirement of adequate representation is satisfied when a state authorizes more than one state entity to defend the validity of state law in federal court. Under *Berger*, "a federal court must respect that kind of sovereign choice, not assemble presumptions against it." *Id.* at 2206. *Berger* clarifies that Rule 24(a)(2) "promises intervention to those who bear an interest that may be practically impaired or impeded 'unless existing parties adequately represent that interest'"—a standard requiring "only a minimal challenge." *Id.* at 2203 (internal citations omitted). Here, the

Legislature meets the Rule 24(a)(2) standard as supported and guided by

*Berger*.[4]

### C. The Legislature Satisfies the Minimal Standard Articulated in *Berger*.

The proper analysis is straightforward. Will excluding the Legislature impair or impede the State's capacity to present the entire range of arguments that—in its judgment—support the validity of section 622 from the United States' challenge? The answer is obviously yes. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). That answer more than meets the traditional test, under which the burden for showing inadequate representation is "minimal" and would be "satisfied

---

[4] Given the clear implications of *Berger*, the United States resorts to arguing *Berger* is factually distinguishable because "[u]nlike the plaintiff in *Berger*, the United States sued the State of Idaho itself—including all of the State's components and agencies." Resp. at 40. The government seems to believe this distinction somehow is reason enough to deny the State of Idaho, speaking through the Legislature, to decide for itself who will represent its interests. Clearly not. The Supreme Court articulated a concern for "defendant shopping" when challenging state law—and that same concern applies here. *Berger*, 142 S. Ct. at 2201. Excluding the Legislature based on the United States' choice of defendants denies the State's choice of representatives. For that reason alone, the fact that this case involves the State as a defendant rather than a component of State government is a distinction without a difference.

if the [party] shows that representation of [their] interest[s] *'may be'* inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (emphasis added). *Berger* explained that "[i]f the intervenor in *Trbovich* faced only a 'minimal' burden, it cannot be that duly designated state agents seeking to vindicate state law should have to clear some higher hurdle." *Berger,* 142 S. Ct. at 2205.

This minimal standard starkly contrasts with the standard proposed in the United States' Response. That standard is only supported by pre-*Berger* case law or case law that did not consider state laws authorizing a body of state government to intervene in defense of state law. Inapplicable case law would require the Legislature to make a "compelling showing" of inadequate representation. *See* Resp. at 26 (citing *Arakaki v. Cayetano*, 323 F.3d 1078, 1086 (9th Cir. 2003) (quoting 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1909 (3d ed. 1998) for the proposition that a "compelling showing should be required to demonstrate inadequate representation where there is the same 'ultimate object.'"). Again, the United States continues to argue that this standard applies, despite *Berger*'s specific repudiation of it. *Berger*,

142 S. Ct. at 2204 (holding that the presumption of adequate representation in FEDERAL PRACTICE AND PROCEDURE § 1909 "holds no purchase" when a state "has authorized different agents to defend its practical interests"). The government's reliance on pre-*Berger* decisions applying that provision or post-*Berger* decisions like *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013 (9th Cir. 2022) where there is an absence of "state [intervention] law" is improper and inapplicable here.

Here, the Legislature's burden is minimal and easily established by the timeline of events described in the opening brief.

### D. The Idaho Legislature Satisfies Traditional Criteria.

Even if *Berger* were not definitive—and it is—the Legislature meets the traditional standards under FRCP 24(a)(2). *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 817 (identifying four traditional elements).[5] There is no dispute on the timeliness of the request for intervention. And

---

[5] "(1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 817.

there can be no serious question that the Idaho Legislature has a legal interest in defending Idaho law against federal challenge. *See Cameron v. EMW Women's Surgical Ctr.*, 142 S. Ct. 1002, 1011 (2022) (acknowledging that States have "a legitimate interest in the continued enforce[ment] of [their] own statutes.") (cleaned up). Equally obvious, lack of intervention would "impair or impede" the Legislature's "ability to protect [its] interest." *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 817.

Inadequate representation is the final factor. Considered objectively, without the thumb on the scales demanded by the United States, Ninth Circuit case law articulates a three-part test: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *See Arakaki*, 324 F.3d at 1086.

Here, the United States all but concedes that this three-part test is met. Indeed, the government's brief effectively admits that the OAG did

not "undoubtedly make all of a proposed intervenor's arguments." *See Arakaki*, 324 F.3d at 1086.

Yet the United States downplays the OAG's unwillingness to support the Legislature's motions to intervene and refers to it as meaningless "non-opposition." *See* Resp. at 34. The record attests otherwise. The OAG's unwillingness to support the Legislature's intervention, despite express authority under Idaho law, forcefully demonstrates that the OAG's interest is not aligned with the Legislature's. *See* 3-ER-306 (OAG's statement of non-opposition to Legislature's initial Motion to Intervene); 2-ER-61 (OAG's Response to Legislature's Renewed Motion to Intervene).

Even more telling is the OAG's failure to present legal arguments pressed by the Legislature in defense of Idaho's challenged abortion law. *See Arakaki*, 324 F.3d at 1086. The record shows that the Legislature produced a "fully drafted legal memo describing multiple legal and constitutional arguments" detailing flaws in the government's motion for a preliminary injunction. 2-ER-90 (Legislature's Mem. ISO Renewed Mot. to Intervene. Yet the OAG declined to address those arguments in its own opposition—even when court-ordered limits on permissive intervention precluded the Legislature from presenting those arguments itself. *See id.*

Struggling against the obvious disparities between the Legislature's and OAG's litigating approach, the United States resorts to spouting inapplicable case law, coupled with the senseless argument that it makes no difference that the OAG failed to raise certain constitutional arguments. *See* Resp. at 34–35. The United States says that not "making an additional constitutional argument in defense of government action does not render the government's representation inadequate." *See* Resp. at 35. But the case it cites, *Victim Rts. Law Ctr. v. Rosenfelt*, 988 F.3d 556, 562 (1st Cir. 2021), *cert denied sub nom. Found. for Individual Rts. in Educ. v. Victim Rts. L. Ctr.*, 142 S. Ct. 754 (2022), stands for the general proposition that a "government entity defending official acts adequately represents the interests of its citizens." The Legislature is not a citizen, and this hardly advances the government's cause.

*Victim Rights* is distinguishable. This pre-*Berger* decision did not involve a state statute expressly authorizing intervention by another state governmental body. Without a state statute authorizing a victim rights group to intervene, the First Circuit concluded there was a "rebuttable presumption that the government will defend adequately its

action." *Id.* at 561 (citing *Cotter v. Mass. Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 35 (1st Cir. 2000)). However, applying that presumption against intervention to the Legislature contradicts *Berger*. In any event, *Victim Rights* does not support the government's contention that the OAG's unwillingness to raise certain constitutional arguments is irrelevant to the question of adequate representation.

The United States also writes that the Legislature was not impacted because the OAG made at least one constitutional argument—the Spending Clause—and that other omitted constitutional arguments constituted "mere disagreements" in litigation "strategy." *See* Resp. at 35. The record says otherwise.

As mentioned above, the OAG did mention the Spending Clause—in a footnote. 2-ER-91. Unimpressed, the district court said the argument was "not sufficiently developed." 2-ER-179. No other constitutional objection to the preliminary injunction made it before the court because the Legislature was not permitted to raise legal arguments. The district court's preliminary injunction order demonstrates that the OAG did not present key arguments and that the Legislature's desired defense was impeded.

Not only that. Restrictions on the Legislature's permissive intervention meant the court did not even consider a "fully drafted legal memo describing multiple legal and constitutional arguments" attached to the Legislature's Motion for Leave to file Legal Arguments. 2-ER-90. Among those arguments were the major questions doctrine and separation of powers claims. Omitting these arguments is far from the mere "strategy call" described by the United States. Rather, the glaring omission of important legal argument shows how the Legislature would have defended section 622 if had been allowed to intervene as requested.

Again relying on the incorrect standard, the United States also says that later proceedings, including motions for reconsideration, were inconsequential because the OAG and Legislature were merely working towards the same goal of "defending the same Idaho law." *See* Resp. at 37. This too fails to appreciate the actual events or their substantive effect on the Legislature's desired defense. The OAG did not endorse the Legislature's reconsideration memorandum that included very different arguments, despite a direct appeal to do so. *See* 2-ER-90. Even when acknowledging arguments offered by the Legislature, the OAG managed

only a passing reference.[6] The United States' attempts to characterize these failures as mere disagreements regarding litigation "tactics" is misleading—entire lines of argument were omitted. *See* Resp. at 33.

In *Berger* the Court held that the state attorney general's decision not to submit expert witness affidavits or to seek a stay following an injunction, as well as other factors drawing the state attorney general away from a single-minded focus on defending state law, rendered his representation of the legislature's interests inadequate. *Berger*, 142 S. Ct. at 2205. Here, the differences between the Legislature's defense of Idaho law and the OAG's approach are even more pronounced. Despite the government's attempted gloss on the record, the Legislature's interests are not adequately represented by the OAG. Both procedural and substantive disparities establish that the OAG is not "capable and willing" to make all the arguments that the Legislature has pressed in carrying out its duties under Idaho law. *Arakaki*, 324 F.3d at 1087.

---

[6] Amazingly, the OAG repeated its earlier mistake by raising the "major questions doctrine" only in a single tentative footnote. 2-ER-111, n.1.

## CONCLUSION

The Court should reverse the decision below and vacate the district court's orders denying intervention.

Respectfully submitted,

*/s/ Daniel W. Bower*
Daniel W. Bower
MORRIS BOWER & HAWS
12550 W. Explorer Drive
Suite 100
Boise, ID 83713
208-345-3333

dbower@morrisbowerhaws.com

*Counsel for Intervenors - Appellants*

October 2, 2023

**CERTIFICATE OF COMPLIANCE
PURSUANT TO 9TH CIRCUIT RULE 32-1
FOR CASE NO. 23-35153.**

I hereby certify that this brief complies with the word limits permitted by Ninth Circuit Rule 32-1. The brief is 6,905 words, excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

*/s/ Daniel W. Bower*
Daniel W. Bower

*Counsel for Intervenors - Appellants*

Dated: October 2, 2023

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, the Idaho Legislature states that it knows of two related cases pending in this Court: *United States of America v. State of Idaho*, Case Nos. 23-35440 and 23-35450 (consolidated appeals of the district court's preliminary injunction of section 622).

Respectfully submitted,

*/s/ Daniel W. Bower*
Daniel W. Bower
MORRIS BOWER & HAWS
12550 W. Explorer Drive
Suite 100
Boise, ID 83713
208-345-3333

dbower@morrisbowerhaws.com

*Counsel for Intervenors - Appellants*

October 2, 2023

# ADDENDUM

# TABLE OF CONTENTS

28 U.S.C. § 1291 ...................................................................... 41

IDAHO CODE § 67-465................................................................ 42

Federal Rule of Civil Procedure 24 .......................................... 43

Federal Rule of Civil Procedure 59 .......................................... 45

## 28 U.S.C. § 1291
## Final Decisions of District Courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title [28 U.S.C. §§ 1292(c) and (d) and 1295].

## IDAHO CODE § 67–465.
## Intervention in Actions Regarding an Idaho Statute.

**(1)** When a party to an action challenges in state or federal court the constitutionality of an Idaho statute, facially or as applied, challenges an Idaho statute as violating or being preempted by federal law, or otherwise challenges the construction or validity of an Idaho statute, either or both houses of the legislature may seek to intervene, at the sole discretion of the senate president pro tempore or the speaker of the house of representatives, or both, in the action as agents of the state of Idaho and as a matter of right, or permissively, by filing a motion in the court as provided in state or federal rules of civil procedure, whichever is applicable.

**(2)** The authority to intervene pursuant to the provisions of subsection (1) of this section:

> **(a)** Does not require evidence that the intervenor's interests differ from any branch, department, office, or official of the state of Idaho; and

> **(b)** Operates regardless of whether the state of Idaho itself is a named party.

**(3)** The provisions of this section shall apply to any litigation that is pending on or after the effective date of this act.

## Federal Rule of Civil Procedure 24
## Intervention

**(a) Intervention of Right**. On timely motion, the court must permit anyone to intervene who:

> (1) is given an unconditional right to intervene by a federal statute; or

> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**(b) Permissive Intervention.**

> **(1)** *In General*. On timely motion, the court may permit anyone to intervene who:

>> **(A)** is given a conditional right to intervene by a federal statute; or

>> **(B)** has a claim or defense that shares with the main action a common question of law or fact.

> **(2)** *By a Government Officer or Agency*. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

>> **(A)** a statute or executive order administered by the officer or agency; or

>> **(B)** any regulation, order, requirement, or agreement issued or made under the statute or executive order.

**(3)** *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

**(c) Notice and Pleading Required**. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

## Federal Rule of Civil Procedure 59
## New Trial; Altering or Amending a Judgment

**(a) In General**.

   **(1)** *Grounds for New Trial*. The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:

      **(A)** after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

      **(B)** after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

   **(2)** *Further Action After a Nonjury Trial*. After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

**(b) Time to File a Motion for a New Trial**. A motion for a new trial must be filed no later than 28 days after the entry of judgment.

**(c) Time to Serve Affidavits**. When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The court may permit reply affidavits.

**(d) New Trial on the Court's Initiative or for Reasons Not in the Motion**. No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting

one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

**(e) Motion to Alter or Amend a Judgment**. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.